CONTAINER CORPORATION OF AMERICA, Plaintiff-Appellant, v. RAYMOND T. WAGNER, Director, Department of Revenue, *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—96—2401

Opinion filed December 26, 1997.

Kenneth H. Denberg and Francis J. Emmons, both of Schwartz & Freeman, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for appellees.

JUSTICE ZWICK delivered the opinion of the court:

The Department of Revenue (the Department) issued a notice of liability to plaintiff, Container Corporation of America, for use tax liability incurred between July 1990 and December 1992 under the Illinois Use Tax Act (35 ILCS 105/1 through 22 (West 1994)), assessed on plaintiff's purchases of chemical solvents. After paying its assessed liability into escrow, plaintiff challenged the Department's ac-

tion under the State Officers and Employees Money Disposition Act (30 ILCS 230/2a (West 1994)). Following the submission of stipulated facts, the circuit court affirmed the Department's ruling on cross-motions for summary judgment. We now affirm.

The facts are undisputed. Plaintiff fabricates boxes used to package consumer products such as detergents and cereals. Plaintiff then sells these boxes to its customers, which subsequently fill them with their own products for resale. The boxes are made, in part, of paperboard, ink and lacquers. The base ingredient for the inks and lacquers is purchased in one of two ways, either in a premixed, ready-to-use liquid, or in an unmixed, concentrated form. When using the inks and lacquers that are made from concentrate, plaintiff dilutes the concentrate with various solvents before applying them to the paperboard. The solvents allow plaintiff to disperse the concentrated inks and lacquers so as to satisfy the specific design and labelling requirements of its customers. Plaintiff pays no tax to its suppliers when it purchases any of the aforementioned liquids.

Following an audit, the Department assessed past-due use tax on the solvents purchased in bulk, but not on the premixed inks and lacquers containing solvents. The Department did so on the basis that plaintiff was an ultimate consumer of the solvents in that the solvents evaporated during the manufacturing process and were not passed on to a consumer of the boxes. Plaintiff was therefore the "user" of the solvent for purposes of assessing use tax. The Department took the same position with regard to the solvent that existed as a component of the premixed ink and lacquers, but declined to assess tax on these ingredients, asserting that it was too difficult to calculate what percentage of the premix was composed of evaporates and what percentage was composed of other ingredients.

## STANDARD OF REVIEW

■ A grant or denial of summary judgment is reviewed on appeal *de novo*. *Quinton v. Kuffer*, 221 Ill. App. 3d 466, 471, 582 N.E.2d 296 (1991). A motion for summary judgment may be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1994); *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986); *Maywood Proviso State Bank v. York State Bank & Trust Co.*, 252 Ill. App. 3d 164, 167-68, 625 N.E.2d 83 (1993). When all parties file cross-motions for summary judgment, the court is invited to decide the issues presented as a question of law. *Spencer v. Riordan*, 240 Ill. App. 3d 938, 944, 608 N.E.2d 432 (1992).

## ILLINOIS RETAILERS' OCCUPATION TAX AND USE TAX

■ The Retailers' Occupation Tax Act (ROTA) (35 ILCS 120/1 through 14 (West 1994)) was enacted by the General Assembly in 1933 to create a tax on the occupation of retail selling. See generally B. Wolfberg, *Sales and Use Tax*, in Illinois State and Local Taxation, ch. 3 (Ill. Inst. for Cont. Legal Educ. 1997); W. Ice, *The Retailers' Occupation Tax Act and Related Tax Laws*, 1961 U. Ill. L.F. 614. Retailers, essentially defined by ROTA as those who sell personal property for consumption (see 35 ILCS 120/1 (West 1994)), are required to remit to the state a percentage of the gross receipts of every retail sale. Following its adoption, Illinois retailers discovered that they were at a competitive disadvantage with out-of-state retailers who were beyond the state's taxing jurisdiction and who were not, therefore, required to remit tax. There was also a concern that some Illinois retailers were leaving the state simply to service their Illinois clients without incurring ROTA liability. In 1955, in response to these concerns, the General Assembly adopted the Illinois Use Tax Act (UTA or use tax). The use tax was designed as a "complementary tax," the purpose of which was to protect Illinois vendors from unfair out-of-state competition and to preserve the ROTA tax base. See *Turner v. Wright*, 11 Ill. 2d 161, 166, 142 N.E.2d 84 (1957).

As we have noted, the ROTA tax is assessed upon Illinois retailers of personal property as a percentage of the gross receipts of each transaction. The Illinois use tax is assessed in the same way and on the same transactions, but use tax is assessed against the purchaser-user of the property sold. The benefit to the state of this taxing scheme, unlike the one imposed by ROTA which cannot reach out-of-state sellers, is that the use tax is assessed regardless of where the purchase is made, so long as the property sold can be construed as being for "use" in Illinois. *People v. Buffalo Confectionery Co.*, 78 Ill. 2d 447, 460, 401 N.E.2d 546 (1980); 86 Ill. Adm. Code § 150.125 (1994).

The use tax is complementary to the retailers' tax because of the way in which use tax is assessed and collected. The UTA expressly provides that its provisions do not apply to out-of-state transactions that would be exempt under the ROTA if the sale had occurred in Illinois. 35 ILCS 105/3—65 (West 1994). Nor is use tax assessed for the use of property purchased outside of Illinois on which a sale or use tax has been paid to another state. 35 ILCS 105/3—55(d) (West 1994); *Turner*, 11 Ill. 2d at 163. Moreover, although UTA tax is a tax on the user-purchaser, it is generally collected by the retailer-seller, who is then permitted a credit to the extent that he has remitted retailers' tax for the same transaction. 35 ILCS 105/9 (West 1994). This arrangement (1) assures that each transaction involving the sale for

use of personal property to an Illinois entity is taxed, regardless of where the purchase occurs, (2) simplifies tax accounting, particularly since the ROTA and UTA taxes are assessed at the same base rate (compare 35 ILCS 120/2—10 (West 1994) with 105 ILCS 3—10 (West 1994)), and (3) gives the Department the advantage of pursuing unpaid sales tax by enforcement action against either the seller of personal property (ROTA) or its purchaser-user (UTA) (see *Mobil Oil Corp. v. Johnson*, 93 Ill. 2d 126, 135, 442 N.E.2d 846 (1982); *Buffalo Confectionery Co.*, 78 Ill. 2d at 460; *Klein Town Builders, Inc. v. Department of Revenue*, 36 Ill. 2d 301, 303-04, 222 N.E.2d 482 (1966); 86 Ill. Adm. Code § 150.301 (1994)).

## ANALYSIS

■ In order to avoid multiple taxation of the same personal property as it moves through the chain of production, only those transactions that involve a consumer of the personal property are subject to tax. See *Dinner Theatre Associates, Ltd. v. Department of Revenue*, 139 Ill. App. 3d 911, 912, 488 N.E.2d 288 (1985). Thus, both ROTA and UTA make statutory exceptions for property that is resold or incorporated into the other property for resale. With regard to UTA, section 2 specifically excludes from taxation any personal property "resold as an ingredient of an intentionally produced product or by-product of manufacturing." 35 ILCS 105/2 (West 1994). Pursuant to this statutory language, plaintiff argues that it should not be assessed use tax on its purchase of the solvents used to make its inks and lacquers because the solvents are incorporated into the base inks and lacquers and resold as part of the finished boxes. Thus, plaintiff argues, it is not an ultimate consumer of the solvent. For support, plaintiff analogizes its circumstance to that of the taxpayer in the case of *American Distilling Co. v. Department of Revenue*, 53 Ill. App. 3d 42, 368 N.E.2d 541 (1977).

In *American Distilling*, the court held that the manufacturer of distilled spirits should not be assessed use tax on its purchase of white-oak barrels used to age bourbon whiskey. The court noted that a key ingredient in the bourbon was derived from the minute quantities of tannins contained in wood of the barrels that leached into the bourbon as it aged. It is these tannins that give bourbon a distinctive flavor and color. The barrels themselves could only be used once in the distilling process and were resold by the taxpayer after the process was complete.

■ We agree that the *American Distilling* case is instructive, but find that the case actually supports the Department's position, rather than that of the plaintiff. In *American Distilling*, the barrels and tan-

nins were not consumed in the manufacturing process as the solvents are here; rather, the tannins and barrels were passed on to subsequent users, albeit in an altered form. In this case, in contrast, the solvents used to dilute the base inks and lacquers are not passed in tangible form to an ultimate consumer because, as established by the stipulations of the parties, the solvents evaporate during the drying process. Although it cannot be disputed that the solvents are personal property and are a necessary part of the box manufacturing process, they are consumed and are not, therefore, passed along in the chain of production. Other cases have long supported this interpretation of the UTA. See, *e.g.*, *Brennan Cattle Co. v. Jones*, 41 Ill. 2d 260, 264-65, 242 N.E.2d 192 (1968) (purchase of medication administered to cattle properly assessed use tax because medications not shown to be physically present when cattle are resold); *Columbia Quarry Co. v. Department of Revenue*, 40 Ill. 2d 47, 51, 237 N.E.2d 525 (1968) (purchase of limestone placed in furnace and burned with iron ore or scrap steel subject to use tax only to the extent that limestone was not subsequently present in resulting "slag," a saleable byproduct containing a measurable quantity of limestone); *Granite City Steel Co. v. Department of Revenue*, 30 Ill. 2d 552, 198 N.E.2d 507 (1964) (purchase of coal and coke for burning in manufacture of pig iron or steel properly assessed use tax to the extent those items are burned; purchase of same coal and coke converted into finished product not assessed use tax.)

■ Plaintiff next argues that section 130.2000(e) of the Illinois Administrative Code specifically precludes the imposition of use tax because this section exempts suppliers from being charged ROTA tax for the sale of "ink" and "chemicals" to "graphic artists" who "incorporate" these items into "printed matter." Plaintiff notes that if its suppliers are not liable to remit ROTA tax on the sale of the solvents, it has no corresponding obligation to remit the complementary use tax. See 86 Ill. Adm. Code § 150.101(c) (1994).

Section 130.2000(e) of the Illinois Administrative Code provides in pertinent part:

> "Suppliers of Persons Engaged in the Graphic Arts—When Not Liable for Tax
>
> > (1) Persons who sell tangible personal property to persons who are engaged in the graphic arts or related occupations and who resell such property to others are not required to remit Retailers Occupation Tax ***. This class of sales includes sales of ink, *** chemicals, *** and other tangible personal property where such property is purchased by persons engaged in the graphic arts or related occupations

and incorporated by them into printed matter \*\*\*." 86 Ill. Adm. Code § 130.2000(e)(1) (1994).

The Department has conceded that when the base ingredient is mixed with the solvents, which are "chemicals," the result is "ink" as that term is commonly used. The Department has also conceded that plaintiff is engaged in the "graphic arts" and that the boxes made by plaintiff, once finished, represent "printed matter." Plaintiff argues that these concessions require the Department to conclude that its suppliers are not liable for ROTA tax on the sale of solvents and, correspondingly, that plaintiff is not liable for use tax on their purchase.

The plaintiff's argument overlooks a critical requirement of the above-quoted Administrative Code section. This provision specifically states that the "chemicals" and "ink[s]," in order for their purchase to be exempt from ROTA tax liability, must ultimately be *"incorporated \*\*\* into printed matter"* (emphasis added). 86 Ill. Adm. Code § 130.2000(e)(1) (1994). In its stipulations with the Department, plaintiff concedes that only a *de minimus* amount of the solvents remains in the printed boxes after production.[1] Rather than being incorporated into the boxes, the solvents are evaporated as part of the drying process. This being the case, section 130.2000(e)(1) is simply not applicable.

■ Plaintiff next argues that because the Department has followed a policy of not assessing ROTA tax on the sale of paint thinners to manufacturers who use them in painting their finished products, the Department cannot tax the solvents it uses to mix its ink, because the use of paint thinners to dilute paint is analogous to the use of solvents to dilute ink. Plaintiff goes so far as to argue that the disparate treatment by the Department between paint thinners and ink solvents violates the uniformity clause of the Illinois Constitution, which provides that the subjects or objects of a tax must be uniformly created. Ill. Const. 1970, art. IX, § 2. In support of this argument, plaintiff relies on a private letter ruling issued in 1967 (R00567 (March 15, 1967)) and two identical rulings issued in 1981 (Priv. Ltr. Rulings 81—0268 (March 5, 1981); 81—0269 (March 5, 1981)), as well as an internal Department memorandum, generated January 10, 1990. These documents concluded that paint thinner applied to a finished product was a non-taxable sale for resale. Plaintiff contends that the Department is bound by the private letter rulings and the 1990 memorandum.

---

[1]Plaintiff's specific admission is "that the vast majority of solvent is evaporated and/or used. Plaintiff cannot state with certainty the percentage of solvent that remains on the [b]oxes, but states that the amount is *de minimus*."

Generally, "private letter rulings have no precedential effect." *Union Electric Co. v. Department of Revenue*, 136 Ill. 2d 385, 400, 556 N.E.2d 236 (1990). Neither do internal memoranda. See *Mobil Oil Corp. v. Johnson*, 93 Ill. 2d 126, 138, 442 N.E.2d 846 (1982) (intra-agency memorandum does not create an agency rule). The *Union Electric Co.* court noted, however, that where a private letter ruling "clearly contains a policy of general applicability" that "reflects the policy which was in effect during the time period at issue," it may be considered "instructive" as to the Department's construction of its regulations. *Union Electric Co.*, 136 Ill. 2d at 400-01.

Here, the private letter rulings and internal memorandum relied on by plaintiff did not reflect a policy of general applicability that was in effect during the time period in issue. As evidence of this fact, the Department appended as exhibits to its motion for summary judgment 17 private letter rulings issued between 1982 and 1994 that found that paint thinner, solvents, and other like property, which were consumed in the manufacturing process and did not become part of the finished product, were not excluded from ROTA and UTA taxes. Priv. Ltr. Rulings 94—0206 (June 7, 1994); 94—0057 (February 24, 1994); 93—0463 (September 20, 1993); 93—0212 (April 30, 1993); 92—0404 (August 5, 1992); 91—0239 (March 26, 1991); 90—0346 (June 22, 1990); 90—0034 (February 2, 1990); 90—0020 (January 24, 1990); 89—0424 (July 3, 1989); 89—0372 (May 19, 1989); 89—0371 (May 19, 1989); 86—0855 (October 9, 1986); 86—0604 (July 14, 1986); 85—0384 (April 10, 1985); 83—0788 (September 15, 1983); 82—0582 (June 14, 1982). In addition, the Department included a letter prepared in 1966 that set out the Department's position on paint thinners as follows:

> "We would still exempt the sale, as a sale for resale, where the thinner is incorporated, as an ingredient, into the paint, and where the paint is then sold by the manufacturer in containers with the thinner still in the paint. However, whoever (including a regular painter, a paint manufacturer or anyone else) buys naphtha or other solvents, as such, and uses them to thin paint which such person will apply, either to his own property or to the property of someone else, is making a taxable purchase of the thinner for use or consumption since it does not become and remain an ingredient of the paint after the paint is applied to the property that is being painted." Priv. Ltr. Rul. R00554 (December 6, 1966).

This is the same position argued by the Department in this appeal with regard to ink solvents.

For the tax period in question, July 1990 through December 1992, the record shows that three private letter rulings and the 1990

internal memorandum were issued. See Priv. Ltr. Rulings R00567 (March 15, 1967); 81—0268 (March 5, 1981); 81—0269 (March 5, 1981). The internal memorandum, dated January 10, 1990, found that paint thinner used by a taxpayer was a nonconsumable item for resale and nontaxable. However, in a private letter ruling issued just two weeks later, on January 24, 1990 (90—0020), the Department determined that paint thinners bought by body shops for use in repairing automobiles *were* consumable items and subject to use tax or retailers' tax. The other three private letter rulings issued in this time period also concluded that both paint thinner and flux, which dissipates during soldering and is therefore analogous to solvents and paint thinners, are fully taxable. Priv. Ltr. Rulings 90—0034 (February 2, 1990); 90—0346 (June 22, 1990); 92—0404 (August 5, 1992).

In addition to the above, the Department produced in the trial court an internal Department memorandum listing the chronology of discussions between staff as to the taxability of paint thinner from 1990 through 1994. This memorandum reveals considerable disagreement over the taxability of paint thinners during this time period.

In our view, this record establishes that both before, during and after the tax period in question, it was the Department's stated position, in most instances, that paint thinner and like products were taxable. At the same time, there was some internal debate over the taxability of such property, which twice, in a 25-year period, manifested itself in private letter rulings that such property was not taxable. Construing this record, the most that can be inferred is that there was disagreement before, during and after the tax period in question as to whether paint thinner should be taxed. Contrary to plaintiff's arguments, a clear policy against taxing paint thinner was never fully developed. Indeed, had such a policy been developed, it would have been contrary both to established precedent and existing Department regulations. See *Granite City Steel Co.*, 30 Ill. 2d at 559; *Columbia Quarry Co.*, 40 Ill. 2d at 51; 86 Ill. Adm. Code § 130.210 (1994). Because the evidence shows that there was no policy of treating paint thinners as nontaxable, and because any policy to that effect would have been contrary to law, the two private letter rulings and the 1990 memorandum did not establish a rule binding the Department in this case. See *Mobil Oil Co.*, 93 Ill. 2d at 137-38.

Because the record establishes that the Department has not generally treated paint thinner differently than the solvent in issue here, none of the cases cited by plaintiff to support its uniformity clause arguments are controlling. It is sufficient to note that they all hold that like property should be taxed alike under the uniformity clause, a principle not challenged by the Department. See *Federated*

*Distributors, Inc. v. Johnson*, 125 Ill. 2d 1, 21, 530 N.E.2d 501 (1988); *National Pride of Chicago, Inc. v. City of Chicago*, 206 Ill. App. 3d 1090, 1104, 562 N.E.2d 563 (1990); *Satellink of Chicago, Inc. v. City of Chicago*, 168 Ill. App. 3d 689, 693-96, 523 N.E.2d 13 (1988) (decided under equal protection clause and not reaching uniformity clause issue).

■ Plaintiff also argues that the Department's failure to tax the solvents contained in the ready-mix inks and lacquers violates the uniformity clause because the distinction between premixed solvents and bulk solvents results in an "illegal classification." See *Hemmer v. Department of Revenue*, 41 Ill. 2d 273, 276, 242 N.E.2d 196 (1968). However, this court has recently recognized that the administrative burden of collecting a tax may be a valid justification for assessing a tax in one instance but not in another. *Communications & Cable of Chicago, Inc. v. City of Chicago*, 282 Ill. App. 3d 1038, 1049-50, 668 N.E.2d 1032 (1994). Plaintiff has suggested nothing that would refute the Department's assertion that the administrative burden of assessing use tax on the ready-mix solvents would pose unwarranted difficulties for taxpayers and its auditors. This being the case, we decline to hold on this record that the Department may not tax bulk solvents differently than it treats solvents contained in ready-mix inks.

■ As a final argument, plaintiff asserts that, even if we should reject its other arguments, the case should, nonetheless, be remanded for a determination by the circuit court of what percentage of solvent is used in the manufacturing process and what percentage of solvent remains in the ink that is delivered to plaintiff's customers. As we have noted, however, plaintiff has stipulated that only a *de minimus* amount of solvent remains in the ink after it dries. The "vast majority" of the solvent evaporates. A *de minimus* amount is not sufficient, as a matter of law, to bring the use of the solvent within the incorporated property exclusion. See *Brennan Cattle Co.*, 41 Ill. 2d at 264; *Smith Oil & Refining Co. v. Department of Finance*, 371 Ill. 405, 408-09, 21 N.E.2d 292 (1939). Accordingly, remand is unnecessary.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

GREIMAN and QUINN, JJ., concur.