FOURTH DIVISION

January 18, 2001

No. 1-99-2075

1-00-1189 (Consolidated)

100 W. MONROE PARTNERSHIP, ) Appeal from the

) Circuit Court
 of

Plaintiff-Appellee, ) Cook County
. 

)

v. ) 

)

)

HERBERT P. CARLSON ) The Honorable

) Sheldon C. Garber
,

Defendant-Appellant ) Judge
 
Presiding.

)

JUSTICE SOUTH delivered the opinion of the court:

Defendant, Herbert P. Carlson, an attorney, maintained law offices at 100 West Monroe Street (Monroe Building) in Chicago, Illinois.  The Monroe Building is owned by plaintiff, 100 W. Monroe Partnership
.

On April 7, 1993, defendant and plaintiff entered into a five-year lease agreement for Suite 1200 commencing on May 1, 1993, and ending on April 30, 1998.  The agreed-upon base rent for Suite 1200 was $3,690.42 plus a proportionate share of the real estate taxes and common area  expenses.  On April 28, 1995, defendant exercised his termination rights under Article 41 of the lease, and in accord with that Article, the lease terminated on November 1, 1995.  

On October 26, 1995, plaintiff and defendant entered into a new one-year lease for Suite 1212 in the Monroe Building which commenced on November 1, 1995, and ended on October 31, 1996.  The rent for Suite 1212 was $1,187.50 per month.  As with the prior lease, defendant was also responsible for his proportionate share of the real estate taxes and common area expenses.  

On October 16, 1996, before the parties' second lease ended, the parties entered into a third lease agreement.  Defendant signed a six-month lease for Suite 711 in the Monroe Building which commenced on November 1, 1996, and ended on April 30, 1997.  The rent was $450 per month.  On April 28, 1997, in accordance with an amendment to the lease, the parties extended the lease for Suite 711 for another six months until October 31, 1997.  On September 15, 1997, defendant extended his Suite 711 lease for the final time until May 1, 1998.  

On May 29, 1998, plaintiff filed a complaint against defendant in the circuit court of Cook County seeking an order of possession of the three suites and to collect all unpaid rent under the Forcible Entry and Detainer Act.  The complaint alleged that from December 1997 through June 1998, rent was due in the amount of $35,688.79, plus attorney fees.  Defendant filed his answer  on July 31, 1998, wherein he denied having sufficient knowledge to form a belief as to the truth or falsity of the allegations.  

On September 16, 1998, plaintiff filed its amended complaint
 with exhibits attached thereto.  Plaintiff alleged that defendant had not paid rent since October 1997, and that despite demands had failed and refused to pay, so that his indebtedness through June 1998, for unpaid rent for suites 1200, 1212 and 711 amounted to $41,138.19.  Plaintiff also sought possession of Suite 711 and identified a promissory note which defendant executed on January 2, 1996, promising to pay plaintiff $46,375.70, plus interest at 8% per annum by April 15, 1996.  

On October 28, 1998, plaintiff moved for judgment on the pleadings or alternatively for summary judgment and attached the affidavit of Dawn Matuzewich
, who was the assistant to the property manager at the Monroe Building.  She stated she was the keeper of the tenant records for plaintiff and had knowledge of defendant's tenant history and the note which she maintained in the ordinary course of business.  Given her knowledge of defendant's tenant history, Matuzewich claimed defendant owed $41,138.19 in unpaid rent through June of 1998.  She further stated that defendant's lease expired May 1, 1998, and that he continued to occupy Suite 711 while paying no rent.  Matuzewich stated that pursuant to the note, defendant owed $46,375.70 plus interest.  As of October 28, 1998, Matuzewich alleged that no payments, credits or setoff had been made on either the note or the unpaid rent.  

On October 29, 1998, plaintiff filed the affidavit of Kevin Costello in further support of its motion for judgment on the pleadings.  Costello stated he had been the building manager at the Monroe Building and had had dealings with defendant as a tenant.  Costello warranted that on or about January 1996, defendant promised to repay the amounts owed for unpaid rent for the suites he had leased, and based upon defendant's representation regarding his intent to pay, Costello had him execute a note evidencing the debt and a promise to repay it by April 15, 1996, which defendant signed.  Costello stated that defendant did not make payment by April 15, 1996, and to his knowledge has never made payments.  

On October 29, 1998, the trial court granted defendant's motion for leave to file his answer and ordered him to respond to plaintiff's motion by November 3, 1998.  On November 4, 1998, defendant filed his response to plaintiff's motion without counter-affidavits or other supporting documents attached.  In that response, he demanded that the amount alleged  be proven by competent evidence, including the manner in which the sum was reached.  

On November 4, 1998, the trial court granted the motion for judgment on the pleadings, awarding plaintiff $44,738.19 in unpaid rent and possession of Suite 711, plus leave to file a petition for attorney fees.  Defendant was ordered to surrender possession by December 1, 1998.  

On December 10, 1998, plaintiff filed its petition for attorney fees.  Defendant was granted leave to respond, and on December 16, 1998, the court awarded plaintiff $4,500 in attorney fees, bringing the total amount awarded plaintiff to $49,238.19, plus costs.  

Defendant failed to surrender possession on December 1, 1998.  Instead, on December 3, 1998, he filed a motion to stay the eviction.  The trial court granted defendant an extension and ordered him to surrender possession by December 15, 1998.  Defendant did not surrender possession by December 15, 1998, and an amended order of possession was entered on December 29, 1998.  

On January 28, 1999, defendant filed a motion to reconsider and vacate the amended order of possession and all other orders awarding possession of Suite 711, money damages, unpaid rent  and attorney fees.  On March 29, 1999, defendant presented his motion to reconsider and vacate, and the trial court granted defendant 10 additional days, until April 8, 1999, to file his memorandum in support of the motion.  

On May 20, 1999, the trial court denied defendant's post-judgment motion to reconsider  and vacate the order of possession.  Defendant filed his notice of appeal on June 4, 1999.  

The June 4, 1999, appeal has been consolidated with another appeal arising from citation proceedings which commenced on November 25, 1998, when plaintiff filed its citation to discover assets.  The proceedings culminated with the circuit court's order entered on March 13, 2000, which denied defendant's emergency motion to vacate the order assigning defendant's beneficial interest in a land trust to the sheriff of Cook County, Illinois.  Defendant filed his notice of appeal on April 11, 2000, a day after his emergency motion to clarify the order assigning his beneficial interest in a land trust to the sheriff was granted.  Clarification was given on the record on April 10, 2000.  

Prior to the March 13, 2000, order denying defendant's motion to vacate, plaintiff secured a turnover order on May 13, 1999, directing defendant to execute an assignment of his beneficial interest in the land trust.  Defendant filed a motion to reconsider and vacate the turnover order on May 19, 1999.  On May 27, 1999, the circuit court denied that motion and ordered defendant to either execute an assignment of the beneficial interest in the land trust by June 4, 1999, or the court would execute the assignment itself.  Defendant did not execute an assignment of the beneficial interest in the land trust by June 4, 1999, and on that date filed an emergency motion to defer the turnover pending appeal.  On June 7, 1999, the trial court granted defendant until June 14, 1999, to execute an assignment of the beneficial interest in defendant's land trust or to post bond upon appeal.  On June 10, 1999, defendant filed his motion to permit additional time to post bond pending appeal.  On June 11, 1999, defendant's motion was granted, and he was given until June 24, 1999,  to allow sufficient time to post an appeal bond and defer the court's order requiring execution of his beneficial interest until that date.  On June 24, 1999, the trial court granted defendant until July 8, 1999, to post bond, and all pending citations were continued until that date.  On July 8, 1999, defendant was granted an extension until July 19, 1999.  On July 16, 1999, defendant filed an emergency motion to permit additional time to post bond pending appeal.  On July 19, 1999, the trial court granted defendant a seven-day extension until July 26, 1999, and held that was defendant's final extension.  On July 30, 1999, plaintiff filed its emergency motion to execute assignment of the beneficial interest.  On August 2, 1999, plaintiff again filed an emergency motion.  Defendant did not post bond.  

On February 2, 2000, the circuit court executed the assignment of the beneficial interest.  As stated above, on April 11, 2000, defendant filed his second appeal claiming that the court's assignment occurred more than six months from the filing of the citation.  

The grant or denial of summary judgment is reviewed on appeal 
de novo
.  
Container Corp. of America v. Wagner
, 293 Ill. App. 3d 1089, 1091, 689 N.E.2d 259, 261 (
1997).  The function of the appellate court on review of summary judgment is to determine whether the trial court properly  determined that no genuine issue of material fact had been raised, and if none was raised, whether judgment was proper as a matter of law.  
Malanowski v. Jabamoni
, 293 Ill. App. 3d 720, 724, 688 N.E.2d 732, 735 (
1997), rehearing denied, appeal denied 177 Ill. 2d 571, 698 N.E.2d 544.  The appellate court may affirm on any ground in the record, regardless of whether the trial court relied upon it and regardless of whether the trial court's reasoning for granting summary judgment was correct.  
Hubert v. Consolidated Medical Laboratories
, 306 Ill. App. 3d 1118, 1125, 716 N.E.2d 329, 335 (
1999).  

In 
North American Old Roman Catholic Church by Rematt v. Bernadette
, 253 Ill. App. 3d

278, 627 N.E.2d 1094 (
1992), the church brought a forcible entry and detainer action seeking to recover possession of the Queen of Peace Convent from defendant Sister Maria Bernadette.  The circuit court granted the church's motion for summary judgment and the appellate court affirmed.  In granting the motion for summary judgment, the circuit court considered the church's verified complaint, accompanying exhibits and transcripts from a prior case where defendant made admissions.  The court found that in a forcible entry and detainer action, defendant could not rest upon the general denial of the allegations in the church's verified complaint to defeat the church's motion for summary judgment where the church had presented ample evidence of its right to the possession of the convent. 
 
Bernadette
, 253 Ill. App. 3d at 289,
 627 N.E.2d at
 1101.  

In this case, plaintiff filed its complaint and defendant filed his answer.  An amended complaint was filed in response to defendant's answer where defendant had denied sufficient knowledge.  Plaintiff's amended complaint discussed the terms of the three leases and amendments of the suites and attached the leases and amendments to the amended complaint as exhibits.  Plaintiff also attached a signed promissory note whereby defendant promised to pay $46,375.70 to plaintiff.  Defendant failed to respond to the amended complaint.  Plaintiff moved for judgment on the pleadings and attached the affidavit of Dawn Matuzewich.  Matuzewich, the assistant to the property manager at the Monroe Building, attested to the terms of defendant's leases and 
defendant's unpaid rent and note.  Plaintiff later filed Kevin Costello's affidavit in further support of the motion for judgment on the pleadings.  Costello, who had been the building manager at the Monroe Building, affirmed that defendant had signed the note for unpaid rent for suites leased, that defendant had not paid the note as agreed by April 15, 1996, and that he had never made payments toward the note.  Defendant's response to the  motion for judgment on the pleadings, the amended complaint, exhibits and affidavits was simply to demand that the amount alleged owed be proved by competent evidence.  Defendant attached neither affidavits nor other supporting documents to his answer to the complaint
 or his response to plaintiff's motion for judgment on the pleadings.  

As stated in 
Bernadette
,
 to defeat a motion for summary judgment under the forcible entry and detainer act, defendant is required to file an affidavit setting forth with particularity facts upon which his or her defense is based.  
Bernadette
, 253 Ill. App. 3d at 289, 627 N.E.2d at
 1101.  E
ven if the complaint and answer purport to raise an issue of fact, summary judgment is nevertheless appropriate if such issues are not further supported by evidentiary facts through affidavits or other proper materials.  
Bernadette
, 253 Ill. App. 3d at 289, 627 N.E.2d at
 1101.  
D
efendant, Carlson, also rested upon a general denial of the allegations in both his answer and response to the motion for judgment on the pleadings.  He failed to counter plaintiff's supporting documents and, hence, raise the genuine issues of material fact necessary for this court to reverse the circuit court and deny the plaintiff's motion for judgment on the pleadings.  

Defendant argues plaintiff was not entitled to the order granting the motion for judgment on the pleadings because he was not in possession of the suites, which, he maintains, is a necessary element to a forcible entry and ejectment claim.  He relies upon 
Hale v. Ault
, 83 Ill. App. 3d 78, 403 N.E.2d 635 (
1980), in support of his position that lessees in possession of premises are not entitled to maintain forcible entry and ejectment claims against lessors who are not in possession.  Defendant contends that plaintiff was in possession of Suites 1200, 1212 and a portion of Suite 711.  Inasmuch as plaintiff was in possession of the suites in contention and not defendant, defendant argues that the Illinois Forcible Entry and Detainer Act (735 ILCS 5/9-209 (West 1996)), does not provide plaintiff with jurisdiction to maintain such an action regarding the non-possessed premises.  

Plaintiff responds that defendant ignores the forcible entry and detainer statute (735 ILCS 5/9-209), which expressly authorizes the landlord to join its claim for unpaid rent with its action for possession.  
Plaintiff argues that it simply joined its claim for all unpaid rent owed by defendant during his tenancy at the Monroe Building and
 relies upon 
LaSalle National Bank v. Helry Corp.
, 136 Ill. App. 3d 897, 903, 483 N.E.2d 958, 963 (
1985), to support its position that a tenant tendering less than unpaid rent is insufficient under the forcible entry and detainer statute.  Plaintiff argues that there are no limitations on the landlord's ability to collect all unpaid rent owed by the tenant under the provision.  
According to plaintiff, defendant recognizes that because his requests to renew his lease and downsize into smaller office space were accommodated.  Additionally, defendant executed a promissory note and a confession of judgment acknowledging his liability for all unpaid rent.  

Defendant leased office space at the Monroe Building for five years without interruption.  He merely changed office space during that five-year span.   
The forcible entry and detainer statute
 does not prevent plaintiff from recovering the unpaid rent from Suites 1200 and 1212
.  We find that the language of the statute (735 ILCS 5/9-209) authorizes plaintiff to join its claim for unpaid rent with its action for possession.  

Plaintiff's amended complaint seeks possession of Suite 711 and unpaid rent for that suite, as well as Suites 1200 and 1212.  When this action was filed, defendant's lease of Suite 711 had expired, and he continued to maintain possession thereof.  Inasmuch as defendant was in possession of Suite 711, a forcible entry and detainer action against defendant was proper.  Clearly, plaintiff does not seek possession of Suites 1200 and 1212 in its amended complaint but merely seeks the unpaid rent.  
Defendant signed a promissory note acknowledging his unpaid rent.  The existence of defendant's debt is further supported by plaintiff's affidavits filed in support of its motion for judgment on the pleadings.  Defendant does not contest the debt with counter-affidavits or other supporting documents.  

Therefore, we hold that no genuine issue of material fact has been raised, and the circuit court's decision to grant plaintiff's motion for judgment on the pleadings is affirmed.  

Illinois Supreme Court Rule 277(f) provides:

“When Proceeding Terminated.
  A proceeding under this rule continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner.  The court may, however, grant extensions beyond the 6 months, as justice may require.  Orders for the payment of money continue in effect notwithstanding the termination of the proceedings until the judgment is satisfied or the court orders otherwise.” 134 Ill. 2d R. 277(f).  

In 
Resolution Trust Corporation v. Ruggiero
, 994 F.2d 1221, 1227 (1993), the U.S. Court of Appeals for the seventh circuit held the U.S. district court's order was valid contrary to defendant's  argument that it was issued more than six months after debtor first appeared for his citation examination, and that no order extending the six-month deadline had been issued.  The court held that the oral ruling, which the written order memorialized, was made several days before the six-month deadline expired, substantially complying with the statute.  
Resolution Trust Corporation
, 994 F.2d 
at 1227-28.  The court also found that inasmuch as the citation examinations had been repeatedly delayed because of defendant's conduct, the delays could be thought of as continuances extending the six-month period, as the statute permits.  
Resolution Trust Corporation
, 994 F.2d 
at 
1228.  "Moreover, since the deadline is intended not only to prevent property from being encumbered by judgment liens indefinitely, but also to protect the judgment creditor from being harassed by his creditors, a debtor who by his own actions delays the citation proceedings should be estopped to plead the deadline."  
Resolution Trust Corporation
, 994 F.2d 
at 1228.  

In the case at bar, the citation to discover assets was filed November 25, 1998.  Defendant was 
ordered  to execute an assignment of beneficial interest in the land trust by June 4, 1999.  
He failed to execute the assignment by that date and filed a variety of motions which were entertained by the court until the court executed the assignment of beneficial interest itself on February 2, 2000.  The May 13, 1999, circuit court turnover order fell within the Supreme Court Rule 277(f) six-month requirement.  The motions which defendant filed delayed the citation proceedings, and he is, therefore, estopped from pleading the Supreme Court Rule 277(f) six-month deadline.  
"A citation lien remains subject to attack and modification until the turnover order.  It is the turnover order which makes the lien irrevocable."  
In re Marino v. Chrysler Credit Corp.
, 205 B.R. 897, 899 (1997).  

Defendant argues that the citation proceedings expired on July 31, 1999, and in accord with Supreme Court Rule 277(f) all orders entered after that date are void, including the turnover order.  
Defendant further states that Supreme Court Rule 277(f) requires the trial court to extend the time of  citation proceedings after six months have elapsed since defendant appeared or the proceedings expired.  Defendant asserts plaintiff never requested to extend the life of these citation proceedings, nor did the trial court grant such an extension.  

Plaintiff responds that contrary to defendant's assertions, it located defendant's asset and moved for and obtained a turnover order on May 13, 1999, which was within the six-month time frame established by Supreme Court Rule 277(f), a
nd that defendant's rights to the property passed upon entry of the turnover order.  

Plaintiff also argues that after the court entered the turnover order, defendant filed three motions to reconsider and vacate that order and five motions for extensions.  Defendant claimed that he needed additional time to post a bond pending his appeal, which he never posted.  Plaintiff states the above motions were filed to delay plaintiff's collection.  

We find that the circuit court entered the turnover order within the six-month period established by Supreme Court Rule 277(f), and that defendant is estopped from 
pleading the six-month deadline
 because his own actions delayed the citation proceedings
. 
The circuit court order assigning defendant's beneficial interest in a land trust to the sheriff of Cook County is not void.  

Based upon the foregoing analysis, the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN, P.J., and BARTH, J., concur.