DEBORAH CHARLES, on Behalf of Herself and Those Similarly Situated, Plaintiff-Appellant, v. FIRST NATIONAL BANK OF BLUE ISLAND *et al.*, Defendants-Appellees.

First District (1st Division)    No. 1—99—1469

Opinion filed January 22, 2002.—Rehearing denied February 26, 2002.

Joseph A. Longo, of Mt. Prospect, for appellant.

Matthew J. Cozzi, of Field & Golan, of Chicago, for appellee First National Bank of Blue Island.

Jerald M. Mangan and R. Andrew Hahn, both of Mangan, Langhenry, Gillen & Lundquist, of Chicago, for appellee David Glen, Inc.

JUSTICE TULLY delivered the opinion of the court:

This matter comes before the court for the second time on appeal to determine (1) whether the trial court properly denied plaintiff leave to file a third amended complaint; and (2) whether the trial court erred in granting summary judgment in favor of the defendants. We will note from the outset that we have another appeal pending in a related case. (No. 1—00—1161.) The cases were not consolidated; however, our decision here will affect the other case. As this court is very familiar with the history of this litigation, we will give a brief recitation of the facts from our 1997 order.

## BACKGROUND

On October 11, 1991, the named plaintiff in this class action, Deborah Charles, purchased a 1991 Saab 900 from defendant David Glen, Inc., d/b/a Downtown Motors. Plaintiff executed a standard form "RETAIL INSTALLMENT CONTRACT" created by Toyota Motor Corporation to finance $32,887.80 of the car's price.

The contract states that the number of monthly payments is 59 at an annual percentage rate (APR) of 12.75%. The contract further states the "FINANCE CHARGE" ("The dollar amount the credit will cost you") is $11,991.60, the "Amount Financed" ("The amount of credit provided to you on your behalf") is $32,887.80, the "Total of Payments" ("The amount you will have paid after you have made all payments as scheduled") is $44,879.40, and the "Total Sale Price" ("The total cost of your purchase on credit, including your down payment of $6,493.00") is $51,372.40.

The plaintiff filed a class action in the circuit court of Cook County. The second amended complaint alleged that at a 12.75% APR, the "Amount Financed" should be $11,757.98, not $11,991.60 as stated in the contract. Moreover, the "Total of Payments" should be $44,646, not $44,897.40 as stated in the contract. The plaintiff's second amended complaint purported to state claims against the defendants for violation of the federal Truth in Lending Act (15 U.S.C. § 1601 *et*

*seq.* (1988)) (hereinafter TILA), violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1991, ch. 121½, par. 261 *et seq.* (now 815 ILCS 505/1 *et seq.* (West 1996))) (hereinafter the Act), violation of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1991, ch. 121½, par. 311 *et seq.* (now 815 ILCS 510/1 *et seq.* (West 1996))) (hereinafter the Uniform Act), negligence and breach of contract. The circuit court dismissed plaintiff's second amended complaint under sections 2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1996)).

On appeal, this court affirmed in part and reversed in part and remanded with instructions. This court affirmed the dismissal of plaintiff's claims based on the TILA and the Act as time barred. We also affirmed the dismissal of plaintiff's claims under the Uniform Act because the plaintiff could not plead future damages. We affirmed the dismissal of the negligence claim based on the *Moorman* doctrine (*Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982)). This left only plaintiff's breach of contract claim. We reversed on the breach of contract claim and directed the circuit court as follows: "to resolve, using Generally Accepted Accounting Principles, the question of whether 12.75% equals the payment schedule as set forth on the contract's face. We further direct the circuit court to grant plaintiff leave to file a third amended complaint containing *only* contract claims." (Emphasis in original.)

## DISCUSSION

Apparently we should have used bold print as well as underlining the word "only" in our 1997 order, as the plaintiff, on remand, sought leave to file a 16-count third amended complaint. The trial judge denied leave to file the third amended complaint stating that pursuant to the appellate court's direction, the plaintiff could only proceed on a breach of contract claim.

■ We first address whether the trial judge abused his discretion in denying plaintiff leave to file the third amended complaint. Whether an amendment to a pleading is granted or denied is within the sound discretion of the trial court. The trial court's decision to deny a motion to amend will not be reversed on appeal absent an abuse of discretion. *Martin v. Yellow Cab Co.*, 208 Ill. App. 3d 572, 576, 567 N.E.2d 461, 464-65 (1990).

■ Among the factors to be considered in deciding whether discretion was properly exercised is whether plaintiff had been afforded previous opportunities to amend the pleadings. *B.C. v. J.C. Penney Co.*, 205 Ill. App. 3d 5, 16, 562 N.E.2d 533, 540 (1990). The plaintiff does not have a right to file unlimited amendments. *Metzger v. New Century*

*Oil & Gas Supply Corp. Income & Development Program*, 230 Ill. App. 3d 679, 700, 594 N.E.2d 1218, 1233 (1992) (trial court's order denying motion for leave to file fourth amended complaint affirmed). Based upon the record in this case, we conclude that the trial court did not abuse its discretion in denying plaintiff's motion to file a 16-count third amended complaint where (1) the dismissal of six of the counts had been previously affirmed by this court on appeal; (2) this court's direction on remand was that the circuit court allow the plaintiff to proceed only on a breach of contract claim; and (3) the plaintiff had already amended her complaint on two prior occasions.

Plaintiff contends that Illinois courts liberally allow for amendments to complaints. Plaintiff's counsel maintains he "uncovered" "several other fraudulent violations and misrepresentations" made by defendants. Plaintiff's counsel also contends that he should be allowed to file new TILA and Act claims based upon these newly discovered violations. Not surprisingly, we disagree.

We suppose we may not have made it clear in our 1997 order exactly what we meant in finding plaintiff's TILA and Act claims to be time barred. Our previous ruling encompassed not only the violations and misrepresentations that plaintiff alleged in the second amended complaint, but all conduct of the defendants that allegedly violated TILA or the Act relating to the October 11, 1991, transaction. In other words, it is irrelevant whether plaintiff "uncovers" other ways the defendants allegedly violated the statutes. To put it plainly, all TILA violations and all Act violations relating to the October 11, 1991, transaction are time barred.

We have reviewed the third amended complaint. Suffice it to say that counts I, II, VII, VIII, IX and X purport to allege causes of action based upon TILA, the Act, or both TILA and the Act with other allegations regarding the Illinois Motor Vehicle Retail Installment Sales Act (815 ILCS 375/1 *et seq.* (West 1996)) thrown in, we suppose, for good measure. As we have previously found, all of these claims are time barred.

We briefly address the remaining claims plaintiff sought leave to file in her third amended complaint. Counts V and VI contain the heading "REFORMATION/ RESCISSION AGAINST DEFENDANTS" and contain the same allegations of fraudulent conduct and misrepresentations alleged in the other counts of this complaint and all previous complaints. The problem with counts V and VI is that reformation and rescission are remedies, not causes of action.

The remaining counts purport to state causes of action for common law fraud and unjust enrichment. As we stated earlier, the plaintiff had filed two amended complaints before this case reached

this court the first time. Despite plaintiff's counsel's contention of "newly discovered" facts, the allegations in the third amended complaint are substantially the same as the previous complaints. Thus, the plaintiff was not prejudiced by the denial of leave to amend since she could have alleged fraud and unjust enrichment in any of the three prior complaints. Defendants, however, would be prejudiced by having to relitigate the TILA and Act issues previously adjudicated by the court. Moreover, our direction on remand was clear that plaintiff could proceed only on a breach of contract claim. Accordingly, we conclude that the trial court did not abuse its discretion in denying plaintiff's motion to file the 16-count third amended complaint and proceeding only on the breach of contract claim.

■ We now address the breach of contract claim. Since the trial court decided this issue on summary judgment, the sole function of this court is to determine whether the judgment was correctly entered as a matter of law. *100 W. Monroe Partnership v. Carlson*, 319 Ill. App. 3d 761, 766, 745 N.E.2d 554, 558 (2001). We review the trial court's ruling *de novo*. *Carlson*, 319 Ill. App. 3d at 766, 745 N.E.2d at 558.

Plaintiff contends that because the payments required by defendants did not reflect an APR of 12.75%, the defendants breached the contract. The essence of the plaintiff's claim is that the contract states an APR of 12.75%, which is not what was charged by defendants.

Defendants contend however, that they did not breach the contract because TILA, which requires the disclosure of the APR charged in an installment contract, considers such disclosure accurate if the rate disclosed is within 1/8 of 1% more or less of the actual rate.

On remand, we directed the circuit court to "resolve, using Generally Accepted Accounting Principles, the question of whether 12.75% equals the payment schedule as set forth on the contract's face." The answer, as it turns out, is "no." However, this does not resolve the breach of contract issue.

■ The Truth in Lending Act requires that certain disclosures be made by the creditor in consumer credit transactions. TILA requires that the creditor include the finance charge expressed as an annual percentage rate. 15 U.S.C. § 1638(a)(4) (1988). TILA also provides:

> "The disclosure of an annual percentage rate is accurate for the purposes of this title if the rate disclosed is within a tolerance not greater than one eighth of 1 per centum more or less than the actual rate or rounded to the nearest one fourth of 1 per centum ***." 15 U.S.C. § 1606(c) (1988).[1]

Regulation Z, promulgated by the Federal Reserve Board to facilitate compliance with TILA, provides in pertinent part:

---

[1]On a motion to reconsider as well as before this court, plaintiff maintains

"As a general rule, the annual percentage rate shall be considered accurate if it is not more than ⅛ of 1 percentage point above or below the annual percentage rate determined in accordance with paragraph (a)(1) of this section." 12 C.F.R. § 226.22(a)(2) (2001).

The issue then is whether compliance with TILA precludes a common law breach of contract claim. The parties stipulated that the actual APR was 12.81%, not 12.75%. The circuit court determined that the APR stated on the contract was within the tolerance allowed under TILA and this precluded plaintiff's breach of contract claim. We agree.

■ We find that because the disclosure of the APR complies with the federal Truth in Lending Act, plaintiff cannot state a claim for breach of contract based upon that disclosure. In *Lanier v. Associates Finance, Inc.*, 114 Ill. 2d 1, 499 N.E.2d 440 (1986), the Illinois Supreme Court determined that compliance with TILA is a defense to liability under the Illinois Consumer Fraud and Deceptive Business Practices Act. In reaching its decision, the *Lanier* court noted that the disclosure requirements of certain Illinois consumer credit statutes are met by compliance with TILA and that these statutes specifically state that compliance with TILA is compliance with the Illinois statute. The *Lanier* court stated, "we perceive in the disclosure provisions of Illinois's consumer credit statutes a consistent policy against extending disclosure requirements under Illinois law beyond those mandated by the Truth in Lending Act, in situations where both the Act and the Illinois statutes apply." *Lanier*, 114 Ill. 2d at 17. *Lanier* has been cited by courts for that point on a number of occasions. See *Price v. FCC National Bank*, 285 Ill. App. 3d 661, 673 N.E.2d 1068 (1996) (principal's compliance with TILA meant compliance with the Illinois Credit Card Issuance Act (815 ILCS 140/0.01 *et seq.* (West 1996)) and precluded liability for common law fraud and breach of contract); *Beckett v. H&R Block, Inc.*, 306 Ill. App. 3d 381, 714 N.E.2d 1033 (1999) (disclosures sufficient under TILA were also sufficient under the Act).

The court in *Lanier* found that a disclosure in compliance with the Truth in Lending Act could not be the basis of a claim for common law fraud. The court reasoned that to hold otherwise would put a creditor in the anomalous position of being guilty of common law misrepresentation by specifically complying with the mandates of the

that the tolerance provision does not apply to her contract because "TILA does not apply to amounts financed exceeding $25,000." We find this argument disingenuous as plaintiff has filed three complaints alleging TILA violations and continues even now to argue that the defendants have violated TILA with respect to her contract.

federal Truth in Lending Act. *Lanier*, 114 Ill. 2d at 10-11. We reach the same conclusion here and also hold that, because the disclosure made by defendants complied with the federal law, it cannot be the basis for a breach of contract claim.

Accordingly, because the disclosure of the APR complied with the federal Truth in Lending Act, we find as a matter of law that defendants did not breach their contract with plaintiff.

Affirmed.

COHEN, P.J., and McNULTY, J., concur.