Dorothea W. Huszagh, Plaintiff-Appellant, v. Milton J. Holloway, et al., Defendants-Appellees.

Gen. No. 69–46.

Second District.

November 18, 1969.

Ralph W. Huszagh, of Barrington, for appellant.

Vedder, Price, Kaufman and Kammholz, and John J. Cassidy, Jr., of Chicago, for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

This is an action in equity wherein the plaintiff sought specific performance of an alleged agreement evidenced by a letter. The defendants, Ralph D. Huszagh and Marjorie W. Huszagh, filed a motion to dismiss the complaint, which was sustained by the court. The plaintiff has appealed from the order dismissing the complaint.

The plaintiff is the widow of L. LeRoy Huszagh, herein called the decedent. The defendants, Ralph D. Huszagh and Milton J. Holloway, are the record owners of

the real estate in question, and the parties to the disputed agreement. The defendant, Ralph D. Huszagh, herein called Huszagh, is the brother of the decedent and the husband of the defendant, Marjorie W. Huszagh; and the defendant, Estelle Holloway, is the wife of Milton J. Holloway, herein called Holloway.

The complaint was filed December 30, 1966. It pertinently alleged: That the decedent died January 9, 1946, leaving a last will and testament whereby the plaintiff was made his sole legatee and devisee; that the will was admitted to probate and the estate was settled and closed; that the plaintiff, by the estate proceedings, was vested with all the rights, privileges and choses in action created by an agreement dated October 26, 1936; and that the agreement, which was attached to the complaint as an exhibit, provided:

"October 26, 1936.

"Mr. Ralph D. Huszagh
6 North Michigan Ave.,
Chicago, Illinois

"Dear Ralph:

"Enclosed please find my check for twenty-six hundred dollars ($2600.00) toward purchase of property for fifty three hundred and fifty dollars ($5350.00) in Barrington, Illinois, known as:

"Lot 2 in County Clerk's Division in the West half of the South West quarter of Section 36 township 43 North, Range 9, East of the 3rd P. M., in Lake County, Illinois, and find that on August 18, 1936.

"It is agreed that you are to put up the other half less the one hundred fifty dollars ($150.00) already advanced by you to purchase the second Mortgage and we are to own this property jointly.

457

"It is further agreed that when the above described real estate is sold we are to give your brother Roy one third of the net profit derived from same.

Yours very truly,<br>
Signed by M. J. Holloway<br>
O. K. Ralph D. Huszagh<br>
R D Huszagh

"MJH:LH

"(Written notes) Or Roy has privilege to pay up one third less $267.00 Real Estate commission. Milton and Ralph entitled to 5% on money invested.

Signed Ralph D. Huszagh

"I am holding the original agreement in my possession and this is a true copy of same.

Signed Ralph D Huszagh."

The complaint also alleged that a fiduciary relationship existed between the decedent and his brother, the defendant, Huszagh, and the defendant, Holloway; that by reason of the illness of the decedent for more than five years prior to his death, Huszagh was the dominant party in said relationship; that the decedent, a licensed real-estate broker, discovered that the business lot in question could be purchased for $5,300 and suggested that he, Huszagh and Holloway, acquire it as a joint investment; that Huszagh and Holloway made a counter-proposal that they purchase it in their own names, but in trust, for the purpose of enabling the decedent to acquire an undivided one-third of the property at any time that he would pay one-third of the cost thereof, less a commission of $267, provided, that Huszagh and Holloway would be entitled to 5% on the money they invested; and, also, when the property was sold, Huszagh and Holloway would pay the decedent one-third of the net profit from the sale.

The complaint further stated that the property is situated in the heart of the Barrington business district and consists of five stores, which are rented; that from the proceeds of mortgages placed on the property by Huszagh and Holloway, and their respective wives, and from the rents and profits from the property, Huszagh and Holloway acquired additional adjoining real estate and have improved it; that Huszagh and Holloway have taken from such rents and profits, substantial sums for their own use in excess of 5% on their investments, and the plaintiff should be adjudicated the owner of an undivided one-third of all of such property, and receive one-third of the profits therefrom after Huszagh and Holloway have been reimbursed for the amount of their invested money, plus 5% per annum on the total sums advanced by them, less $267; that if Huszagh and Holloway have not received from said profits to date, all of the money advanced by them, less said $267, then the plaintiff will make such payments unto them as may be found due and owing; and that the plaintiff has requested an accounting from them and they have refused to account.

The plaintiff in her prayer for relief sought an accounting; an adjudication that she is the owner of an undivided one-third of the real estate in question, and is entitled to one-third of the profits therefrom; and prayed that the court determine the sum of money, if any, which she must pay to the defendants in order to exercise her option to purchase. She also prayed for the partition of the property.

The motion to dismiss set forth five reasons for the dismissal of the complaint, to wit: (1), laches—the complaint was devoid of any reason excusing or explaining the thirty-year delay between the date of the alleged agreement and the commencement of the plaintiff's ac-

tion; (2), the Statute of Limitations; (3), that the alleged agreement is unenforceable in equity because it is vague and indefinite, lacks consideration, and was abandoned by the decedent prior to his death; (4), that the plaintiff cannot maintain the action because the rights granted to her husband were made solely to him and were not transferrable, devisable or inheritable, and could not be enforced by a person who was not a party to the agreement; and (5), that the complaint failed to allege any facts upon which an implied or constructive trust could be raised by operation of law.

The trial court filed a memorandum of decision along with its order dismissing the complaint. In the memorandum, the court noted that the plaintiff had not alleged that her husband had ever sought to exercise any of his purported rights under the alleged contract or made any claim of interest in the property during his lifetime; that the plaintiff's first claim relative thereto was made in 1964 when she filed an affidavit of claim in the office of the Recorder of Deeds of Lake County; and that the reasons stated in the motion to dismiss were well founded in law, and set forth proper grounds for the dismissal of the complaint.

On appeal, the plaintiff contends that the letter constituted a written contract which contained all of its material provisions in clear, certain and definite language; that it was valid and enforceable; that the cause of action has not accrued on the contract; that the plaintiff has not been unjustly enriched, or the defendants have not been damaged by the delay, and neither the statute of limitations nor the doctrine of laches have application; that the contractual rights of the decedent in the realty in question were inheritable and devisable; and that the defendants for their own unjust enrichment abused a fiduciary relationship with both the decedent and the plaintiff.

Laches is purely an equitable doctrine and has been called the doctrine of stale demand. Whether an action is barred on account of laches is to be determined by the facts and circumstances of each particular case. Generally, laches has been defined as such neglect or omission to assert a right, taken in conjunction with lapse of time and other circumstances causing prejudice to an adverse party, as will operate as a bar in equity. In re Estate of O'Donnell, 8 Ill App2d 348, 353, 132 NE 2d 74 (1956).

In Pyle v. Ferrell, 12 Ill2d 547, 147 NE2d 341 (1958), at page 552, the court, in discussing the circumstances under which the doctrine of laches will be applied, stated:

> "Laches, or the doctrine of stale demand, as it is sometimes termed, is a defense peculiar to equity which is bottomed on the reluctance to aid one who has knowingly slept upon his rights and acquiesced for a great length of time, (19 Am Jur, Equity, sec 489) and its existence depends on whether, under all circumstances of a particular case, a plaintiff is chargeable with want of due diligence in failing to institute proceedings before he did. (McCartney v. McCartney, 8 Ill2d 494.) Although laches is defined by one authority as such delay in enforcing one's rights as will work to the disadvantage of another, (30 CJS, Equity, sec 112) it is, unlike limitations, not a mere matter of time but principally a question of the inequity of permitting the claim to be enforced, an inequity founded upon some change in the condition or relation of the property and parties, and where there is such a change as to make it inequitable to grant relief, it will be refused. (McKey v. McKean, 384 Ill 112.) Laches is, therefore, such neglect or omission to assert a right, taken in con-

461

junction with a lapse of time of more or less duration and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity. (Curtis v. Curtis, 398 Ill 442; Gaffney v. Harmon, 405 Ill 273; Carlson v. Carlson, 409 Ill 167.)"

Also, in considering the application of the doctrine to one who passively allows another to make expenditures for improvements, pay taxes and otherwise become obligated in connection with real estate, the court at page 555 stated:

"In addition to the neglect and delay which attended the appellant's prosecution of this action, we may consider that a party is guilty of laches which ordinarily bars the enforcement of his right where he remains passive while an adverse claimant incurs risk, enters into obligations, or makes expenditures for improvements or taxes. (See: 30 CJS, Equity, sec 118.) Here it is undisputed that Ferrell, after waiting 15 years for appellant to redeem his land or to assert himself against the tax title, incurred the risk and obligations attendant to a lease of the mineral estate for oil and gas, and that he expended money for the taxes on the premises for a period of 20 consecutive years. We may consider too that the rule of laches is particularly applicable where the difficulty of doing entire justice arises through the death of parties to the transaction complained of. (Neagle v. McMullen, 334 Ill 168; Carlock v. Carlock, 249 Ill 330.)"

■■ In the case at bar, we take judicial notice that real estate values have increased substantially since 1936. Atchison, T. & S. F. Ry. Co. v. United States, 284 US 248, 260 (1932); Klee v. Chicago Trust Co., 365 Ill 354, 356, 6 NE2d 442 (1937). The marked appreciation in value of the claimed property over a period of

462

time, in which neither the plaintiff nor the decedent made any effort to enforce the rights now claimed in the property, is a factor which courts have recognized as evidence of the injury or prejudice which justifies the application of the doctrine of laches.

In Johnson v. Whitney Metal Tool Co., 342 Ill App 258, 96 NE2d 372 (1950)—a case involving an option for an unspecified time for the purchase of stock, where the optionee made no attempt to exercise the option until five years had expired during which time the stock increased materially in value—the court stated at page 269:

> "The law is that where there has been a material advance in the price of property covered by an option, unexplained delay in exercising the option will defeat the right to specific performance. (Stuckrath v. Briggs & Turivas, 329 Ill 555, 566; Harry Manaster & Co. v. Young, 302 Ill App 545, 555.)"

In Barker v. Barker, 36 Ill App2d 20, 183 NE2d 518 (1962)—a case involving an alleged resulting trust—the court, in expressing its view on the subject of laches, stated that where the plaintiff—who, before filing suit, had waited 9 years without asserting a claim, and permitted the defendant to act as owner of the property while it increased in value—was guilty of laches. At page 29, the court stated:

> "Marked appreciation of the value of property is ordinarily fatal to a plaintiff's case where he might have asserted his right before the change and the relief, if granted, would work inequity. 30 CJS sec 118, p 541; People ex rel. Jones v. Leviton, 327 Ill App 309, 64 NE2d 195; Carlock v. Carlock, 249 Ill 330, 94 NE 507. Where the property involved is of a speculative or fluctuating character, a claimant must be more than ordinarily prompt and may not

463

await the outcome of an enterprise to assert his interest. 30 CJA sec 118, p 541; Pyle v. Ferrell, 12 Ill 2d 547, 147 NE2d 341; Benson v. Dempster, 183 Ill 297, 55 NE 651; Cleaver v. Green, 107 Ill 67."

■ If a plaintiff seeks the aid of a court of equity in the enforcement of a stale claim, he must allege in his complaint some valid reason which excuses the delay. In LeGout v. LeVieux, 338 Ill 46, 169 NE 809 (1930), the cross complainants waited over 50 years before claiming an interest in real estate, and the interest was asserted after the discovery of oil on the land. During this 50-year period, they never controverted the rights of other persons to the premises. The lower court dismissed the cross complaint, the Supreme court affirmed the lower court, and at page 51 stated:

"When a court of equity is asked to lend its aid in the enforcement of a demand that has become stale there must be some cogent and weighty reasons presented why it has been permitted to become so. Good faith, conscience and reasonable diligence of the party seeking its relief are the elements that call a court of equity into activity, (McDearmon v. Burnham, 158 Ill 55; Castner v. Walrod, 83 id. 171; Carpenter v. Carpenter, 70 id. 457;) and the absence of any one of these elements is fatal to a recovery."

When we view the factual allegations of the complaint as true, we note that the letter which constituted the alleged written agreement was dated October 26, 1936. The decedent knew of the alleged agreement upon which the plaintiff predicates her rights. He died in January 1946—almost ten years later—without ever attempting to exercise his purported rights to purchase a one-third interest in the property, and without asserting a claim to a one-third interest therein.

After his death, the plaintiff did not make claim to any rights in the property until 1964—eighteen years after decedent's death. Suit was not filed until December 30, 1966, more than thirty years after the letter was written and more than twenty years after the decedent's death. Yet, the complaint fails to allege any reason which would excuse the plaintiff's failure in this respect, and the only circumstance alleged, which would excuse the decedent's inaction, was illness for more than five years prior to his death. Such unexplained delay on the part of the plaintiff and the decedent in asserting any rights under the alleged contract, renders them guilty of laches, which bars the enforcement of the alleged claim against the defendants.

During this thirty-year period, according to the allegations of the complaint, the property was "improved with a substantial brick and stone, steam heated building, consisting of 5 stores," and the defendants, with funds from rentals and from mortgage loans on the property, acquired additional real estate adjoining the property. The complaint does not allege that the plaintiff or the decedent participated in the management and improvement of the premises, in the purchase of the adjoining realty, in the signing of the mortgages and notes, or in the payment of the annual real-estate taxes on the premises.

█ We believe that the order dismissing the complaint can be affirmed on the doctrine of laches. Thus, under our view of the case, and in the interest of judicial parsimony, a decision with reference to the other reasons assigned by the trial court, and the defendants, for the dismissal of the complaint is unnecessary; nor do we reach the contentions of the plaintiff urged for reversal of the trial court, other than that which asserts that the doctrine of laches has no application in this proceeding.

Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

MORAN, P. J. and ABRAHAMSON, J., concur.