KEVIN FOX, Plaintiff-Appellant, v. COMMERCIAL COIN LAUNDRY SYSTEMS, Defendant-Appellee.

First District (4th Division)   No. 1—00—3820

Opinion filed September 13, 2001.

Ali ElSaffar, of Oak Park, for appellant.

Lawrence E. Sommers and Shari J. DeKoven, both of Russel G. Winick & Associates, P.C., of Naperville, for appellee.

JUSTICE THEIS delivered the opinion of the court:

Plaintiff, Kevin Fox, filed a forcible entry and detainer action against defendant, Commercial Coin Laundry Systems (Commercial), alleging that it breached the terms of a laundry-room lease by failing to make timely rental payments. After considering cross-motions for summary judgment, the trial court ruled in favor of Commercial and against Fox. The sole issue before this court is the proper interpretation of a lease providing for semiannual rent payments. For the following reasons, we reverse and remand for further proceedings.

On July 2, 1987, Commercial entered into a lease with the owner of the premises at 316 Marengo Avenue in Forest Park to operate a laundry facility for use by the tenants. The lease was assumed by Fox in August 1998 and was set to expire on July 2, 2006, by court order. The form lease agreement provides in pertinent part:

> "LESSEE shall pay to LESSOR as rent for the demised premises *** a sum equal to fifteen per cent of the dollar amount of LESSEE'S coin receipts from the aforesaid coin operated equipment during the period that this Lease shall continue in full force and effect. The aforesaid payments shall be made to the LESSOR semiannually."

On January 27, 2000, Fox wrote Commercial a letter stating that he understood the lease terms to require payment of the rent on January 2 and July 2 of each year and that, while accepting three late payments in the past, he would consider future late payments to be a breach of the lease. When rent was not forthcoming on July 2, 2000, Fox served a five-day notice of termination of tenancy on Commercial dated July 3, 2000. When no rent was paid within the five-day notice period, Fox then filed a forcible entry and detainer action on July 14, 2000, seeking delinquent rent and possession of the laundry-room facility. Both parties filed cross-motions for summary judgment, each arguing their respective interpretation of the contract terms. After considering the motions, the trial court granted judgment in favor of Commercial and against Fox, finding that Commercial had not breached the payment terms of the lease.

■ On appeal, Fox contends that the trial court erred in denying his motion for summary judgment where the language of the contract and the rules of construction support his interpretation of the lease terms providing that rent payments are to be made "semiannually." When reviewing the entry of summary judgment, the sole function of this court is to determine whether the trial court correctly ruled that

no genuine issue of fact was raised and, if none was raised, whether the judgment was correctly entered as a matter of law. *100 W. Monroe Partnership v. Carlson*, 319 Ill. App. 3d 761, 766, 745 N.E.2d 554, 558 (2001). We review the trial court's ruling *de novo. Carlson*, 319 Ill. App. 3d at 766, 745 N.E.2d at 558.

In interpreting the rental terms of the lease, we are guided by general principles of contract construction. *Williams v. Nagel*, 162 Ill. 2d 542, 555, 643 N.E.2d 816, 822 (1994). Thus, we must give effect to the intent of the parties as expressed in the language of the contract. *Scoville Court Condominium Ass'n v. Orozon*, 171 Ill. App. 3d 932, 935, 525 N.E.2d 1109, 1110 (1988). The contract "should be given a fair and reasonable interpretation based on consideration of all its language and provisions." *Shelton v. Andres*, 106 Ill. 2d 153, 159, 478 N.E.2d 311, 314 (1985). Where there is any doubt or uncertainty as to the meaning of the language used in the lease, it should be construed most strongly against the drafter. *NutraSweet Co. v. American National Bank & Trust Co. of Chicago*, 262 Ill. App. 3d 688, 695, 635 N.E.2d 440, 445 (1994).

The Random House Dictionary of the English Language defines "semiannually" as "every half year" or "twice a year." Random House Dictionary of the English Language 1740 (2d ed. 1987). Fox maintains that the rent was due "every half year" and that the January 2 and July 2 due dates can be determined by reference to the lease commencement date of July 2, 1987, and the July 2, 2006, expiration date. Commercial argues that the terms of the lease merely provide for two rental payments every year and that there has been a course of dealing for the past 13 years to pay rent sometime in January and July.

We find Fox's interpretation is the better reasoned one in the context of this contract. While there are no Illinois cases directly construing the meaning of "semiannually" in the context of a lease with no other fixed rental due dates, it is clear that a valid lease requires a definite agreement as to the time of payment. *Weiman v. Butterman*, 124 Ill. App. 2d 246, 252, 260 N.E.2d 321, 324 (1970). Furthermore, "where by the contract the rent is payable either yearly, half-yearly, quarterly, monthly, or weekly, and there is no provision for payment at any particular time during such periods, either expressly made or to be gathered by necessary implication[,] *** the rent is not due and payable until the end of those respective periods," unless there is a custom or agreement indicating an alternative due date. 49 Am. Jur. 2d *Landlord and Tenant* § 713 (1995); *Bournique v. Williams*, 225 Ill. App. 12, 21 (1922). Accordingly, where the lease agreement provides for rent to be paid semiannually, and commences on July 2, the end of the payment period can be implied by using the

"every half year" definition. Under this definition, rental payments would be due at the end of the half-year period on January 2 and July 2. See also *Cornell v. Cornell*, 96 N.Y. 108, 112 (1884) ("[o]rdinarily, [semiannually] would mean at the expiration of each half year from the date of the agreement"); *C.F. Denney v. Traders National Bank of Kansas City*, 408 S.W.2d 71 (Mo. 1966) (lease specifying payments to be made semiannually commencing August 1, 1960, required that rent was due on February 1 and August 1 of each year).

To hold, as Commercial suggests, that the rent could be paid at any two times during the year is inconsistent with the rule in Illinois requiring a definite time for payment. Additionally, "where a contract is susceptible to one of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred." *NutraSweet*, 262 Ill. App. 3d at 695, 635 N.E.2d at 445. Payments at any two times during the year would be inconsistent with a reasonable commercial bargain given the nature of the cash business involved in the present case. Where the amount of the rent payment is determined by a percentage of the laundry proceeds, a regular accounting every six months would be more reasonable than at unscheduled periods during the year.

Moreover, as plaintiff notes, the Forcible Entry and Detainer Act provides that landlords may serve a five-day notice on tenants for delinquent rent at "any time after rent is due." 735 ILCS 5/9—209 (West 2000). If we were to construe the term "semiannually" to mean twice a year, without implying a fixed due date, as Commercial suggests, the landlord would be unable to pursue an eviction for late payment of rent, the very problem at issue here. Accordingly, we find that the rent was due on January 2 and July 2 during the pendency of the lease agreement. While Commercial asserts that there was an agreement to the contrary because rent had been paid at some time in January and July since 1987, there was no evidence presented to the trial court to support this contention.

Lastly, although a landlord may waive his right to enforce a lease covenant for prompt payment of rent if he accepts late rent, the waiver can be remedied by notifying the lessee of his "intention to insist on strict compliance with the lease prior to declaring a forfeiture." *La Salle National Bank v. Khan*, 191 Ill. App. 3d 41, 47, 547 N.E.2d 472, 475 (1989). We find Fox's letter of January 27, 2000, along with the five-day notice of termination, was sufficient notification of his desire to insist on strict compliance with the lease. Consequently, Fox

is entitled to summary judgment as a matter of law on his forcible entry and detainer action for Commercial's breach of the rental payment terms of the lease.

For the foregoing reasons, we reverse the award of summary judgment entered by the circuit court in favor of Commercial and against Fox and remand for further proceedings consistent with this opinion.

Reversed and remanded.

GREIMAN and QUINN, JJ., concur.