*In re* MARRIAGE OF MARY PIXIE CARRIER, Petitioner-Appellee and Cross-Appellant, and GREGORY F. CARRIER, Respondent-Appellant and Cross-Appellee.

Second District No. 2—01—0738

Opinion filed June 3, 2002.—Modified on denial of rehearing July 22, 2002.

James T. Magee, of Magee, Negele & Associates, of Round Lake, for appellant.

Joel S. Ostrow, of Law Offices of Joel S. Ostrow, of Chicago, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

Pursuant to a judgment of dissolution entered on June 14, 2000, the respondent, Gregory Carrier, was to transfer $725,000 from his individual retirement account (IRA) to the petitioner, Mary Pixie Carrier. On November 27, 2000, Mary filed a rule to show cause and requested an award of postjudgment interest after Gregory failed to execute the necessary documents to effectuate the transfer. Following a hearing, the trial court awarded Mary postjudgment interest for the period of September 28, 2000, until the date that the transfer was finally accomplished. Additionally, because the market value of the IRA had decreased since the entry of the dissolution judgment, the trial court apportioned the loss between Gregory and Mary. Both parties have appealed from this order. Gregory argues that the trial court abused its discretion in awarding postjudgment interest. Mary argues that the trial court erred in apportioning the loss in value of the IRA and in not awarding postjudgment interest from the date that the dissolution judgment was entered.

The facts relevant to the instant appeal are as follows. On June 14, 2000, pursuant to a marital settlement agreement, the trial court entered a judgment dissolving the parties' marriage. Section 11.2 of the dissolution judgment provided as follows:

"11.2. As a further division of property rights, the Wife shall retain as her sole and separate property, free and clear of any and all rights, claims or interest of the Husband, the following items:

* * *

d. The sum of $725,000 which shall be transferred to the Wife (or her directed retirement account) from the Husband's Fidelity Investments IRA/SEP account #143—140279/143—133736 pursuant to a Qualified Domestic Relations Order."

On June 14, 2000, prior to the entry of the dissolution judgment, the trial court conducted a prove-up of the settlement agreement. At the prove-up, Gregory testified that he understood that Mary would receive $725,000 from his IRA account regardless of whether the market value of the account rose or fell following the entry of the judgment.

On November 27, 2000, Mary filed a petition for a rule to show cause. In her petition, Mary alleged that, on three different occasions, her attorney had written to Gregory's attorney requesting his cooperation in effectuating the transfer of the $725,000. Mary alleged that, despite these efforts, Gregory failed to execute a letter of direction instructing Fidelity to transfer the funds. Mary requested the entry of an order requiring Gregory to execute all documents necessary to effectuate the transfer. Mary also requested an award of 9% postjudgment interest.

On February 23, 2001, the trial court conducted an evidentiary hearing on the petition for the rule to show cause. At the hearing, numerous correspondences between the parties were introduced into evidence. In a letter dated June 22, 2000, Mary's attorney advised Gregory's attorney that Mary's financial advisor would be "effectuating" the transfer. In another letter dated August 9, 2000, Mary's attorney wrote to Gregory's attorney and indicated that Fidelity was "dragging their feet." The letter requested that Gregory execute a letter of direction instructing Fidelity to transfer the funds.

On August 16, 2000, Gregory wrote to Mary's attorney and indicated that he had spoken to Fidelity that day and that Fidelity needed some direction as to how the "assets [would] be split." Gregory advised that Mary might want to speak with Fidelity prior to "firing off the letter you enclosed for my signature." Gregory testified that he had enclosed a letter of direction to Fidelity in this August 16, 2000, correspondence to Mary's attorney.

Mary's attorney, however, denied that the letter of direction was enclosed in Gregory's August 16, 2000, correspondence. Mary's attorney sent Gregory's attorney letters on August 21, 2000, and September 18, 2000, again requesting that he provide a letter of direction. As of the date of the hearing, Mary's attorney still had not received the requested letter of direction from Gregory.

Gregory testified that sometime after September 1, 2000, the market value of the account started to decrease. By the time of the hearing, the account was worth $120,000 less than it was at the time the dissolution judgment was entered. Gregory testified that his understanding of the settlement agreement was that the parties were to divide the IRA account on a percentage ratio, with Mary to receive

76% and him to receive 24%. At the time the dissolution judgment was entered, 76% of the IRA was worth approximately $725,000. However, because the value of the account had gone down, Gregory asserted that the value of Mary's share had also decreased.

Gregory further testified that he cooperated in the efforts to transfer the funds and provided the requested letter of direction. After receiving several letters from Mary's attorney in August 2000, he went to Fidelity's offices to attempt to effect the transfer in September 2000. Gregory testified that he wanted to liquidate the funds in order to preserve the principal. However, he was unable to accomplish any of these tasks because the account had been frozen as a result of the divorce proceedings. Gregory acknowledged that he had taken no further action to attempt to transfer the funds.

On March 12, 2001, the trial court entered its written order. The trial court found that Mary had initially undertaken the responsibility to effect the transfer and that all losses in the market value of the account between the date of the judgment and September 1, 2000, would be allocated to her. The trial court found that for the period between September 1, 2000, and September 28, 2000, each of the parties should assume a proportion of the loss in market value in accordance with his or her ratio of interest (Mary 76.32% and Gregory 23.68%). Finally, the trial court found that Gregory was responsible for all of the delay following September 28, 2000, and that all losses in the account's value during this time would be allocated to him. The trial court also awarded Mary 9% interest on the amount she was entitled to receive on September 28, 2000. Interest was to be calculated from the date of September 28, 2000, until the date that the transfer was finally accomplished. The trial court found that the total amount due to Mary through March 9, 2001, was $733,078. The trial court ordered Gregory to send a letter of direction to Fidelity within 48 hours instructing a transfer of this amount to Mary.

On May 11, 2001, Mary presented an emergency motion requesting that Gregory be ordered to sign certain transfer documents and requesting that an additional $10,875 in interest be added to the judgment amount. On May 21, 2001, the trial court ordered Gregory to execute a letter of direction instructing Fidelity to transfer an additional $10,875. Gregory subsequently filed a timely notice of appeal and Mary filed a timely notice of cross-appeal.

Gregory's sole argument on appeal is that the trial court erred in awarding judgment interest. Gregory argues that section 2—1303 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—1303 (West 2000) does not apply to a judgment rendered in a divorce proceeding. Although Gregory concedes that the trial court may award judgment

interest at its discretion, he contends that such an award was not warranted in this case. On cross-appeal, Mary argues that she was entitled to a lump-sum transfer of $725,000 from Gregory's IRA and that the trial court erred in apportioning the loss in the market value of the account between the parties. Mary also argues that the trial court erred in not awarding interest from the entry of the dissolution judgment on June 14, 2000.

■ Prior to considering the propriety of the award of interest, we must first construe that portion of the dissolution judgment concerning the division of Gregory's IRA. As noted above, the trial court's dissolution judgment incorporated the marital settlement agreement entered into between the parties. Interpreting the terms of a marital settlement agreement is a matter of contract construction and the court should seek to effectuate the parties' intent. *In re Marriage of Wenc*, 294 Ill. App. 3d 239, 243 (1998). Ordinarily, the best guide to the parties' intent is the language they used. *Wenc*, 294 Ill. App. 3d at 243. The trial court should consider parol evidence to decide what the parties intended only when the language contained in the settlement agreement is ambiguous. *Wenc*, 294 Ill. App. 3d at 243. The interpretation of a marital settlement agreement is a question of law. *Wenc*, 294 Ill. App. 3d at 243.

■ We find no ambiguity in the language of section 11.2(d) of the marital settlement agreement, which is quoted above. That provision plainly requires that "the sum of $725,000 *** be transferred to the Wife *** from the Husband's Fidelity Investments IRA/SEP account." According to this language, Mary is to receive the sum of $725,000 from the account. There is no language in the settlement agreement that defines Mary's share of the IRA in terms of a percentage or indicates that Mary's share would be impacted by subsequent fluctuations in market value. We therefore conclude that the trial court erred in finding that Mary's share of the IRA was affected by the change in the market value of the account between the time of the dissolution judgment and the date of the transfer.

Although we find the language of the marital settlement agreement to be unambiguous, we nonetheless note that our interpretation is supported by Gregory's own testimony at the prove-up. Gregory testified that his understanding of the marital settlement agreement was that Mary was to receive a lump-sum payment of $725,000 from his Fidelity IRA account. Gregory acknowledged that this amount was final and would not change regardless of the fluctuation in the market value of the account following the entry of the dissolution judgment. Accordingly, we hold that the trial court erred in altering the amount Mary was to receive from Gregory's IRA. Mary was clearly entitled to receive $725,000 from that account.

■ We next turn to a consideration of the trial court's award of postjudgment interest. The parties initially dispute whether section 2—1303 of the Code applies in dissolution actions. Section 2—1303 provides that "[j]udgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied." 735 ILCS 5/2—1303 (West 2000).

In *Finley v. Finley*, 81 Ill. 2d 317, 331-32 (1980), our supreme court held that section 2—1303 does not apply to dissolution actions. The court explained that a divorce proceeding partakes so much of the nature of a chancery proceeding that it must be governed by the rules that are applicable in chancery cases. *Finley*, 81 Ill. 2d at 332. In a chancery proceeding, the allowance of interest lies within the sound discretion of the trial judge and is allowed where warranted by equitable considerations and is disallowed if such an award would not comport with justice and equity. *Finley*, 81 Ill. 2d at 332. For this reason, the supreme court concluded that the award of interest is not mandatory but instead lies within the sound discretion of the trial judge, whose determination will not be set aside absent an abuse of that discretion. *Finley*, 81 Ill. 2d at 332.

As Mary correctly notes, this court has held that the rule articulated in *Finley* is not applicable in instances where the parties have entered a marital settlement agreement. *In re Marriage of Sloane*, 255 Ill. App. 3d 653, 659 (1993). In *Sloane*, we explained that a marital settlement agreement is a contract between the parties. We reasoned that, when a dissolution judgment is entered pursuant to such a contract, the obligations of the parties arise from the contract and are not imposed by the trial court for equitable reasons. *Sloane*, 255 Ill. App. 3d at 659. We found that, in such an instance, the trial court exercises no equitable discretion in entering the dissolution judgment and that the rationale expressed in *Finley* does not apply. *Sloane*, 255 Ill. App. 3d at 659. Accordingly, we concluded that section 2—1303 should be applied in instances where the dissolution judgment is entered pursuant to a marital settlement agreement. *Sloane*, 255 Ill. App. 3d at 659.

However, we note that our decision in *Sloane* is at odds with numerous other appellate decisions that have given broad effect to the reasoning in *Finley*. See *In re Marriage of Ahlness*, 229 Ill. App. 3d 761, 763 (4th Dist. 1992); *Robinson v. Robinson*, 140 Ill. App. 3d 610, 612 (1st Dist. 1986); *In re Marriage of Bjorklund*, 88 Ill. App. 3d 576, 580-81 (1st Dist. 1980). These courts have held that, under the rule expressed in *Finley*, section 2—1303 of the Code does not apply to dissolution judgments awarding property, maintenance, or attorney fees. The only exception to the general rule expressed in *Finley* is a judg-

ment awarding child support, which now may be taxed with statutory interest under section 2—1303. See 735 ILCS 5/12—109 (West 2000).

Moreover, we note that our reasoning in *Sloane* has been rejected by the Illinois Appellate Court, First District. *In re Marriage of Kaufman*, 299 Ill. App. 3d 508, 511 (1998). In *Kaufman*, the court held that section 2—1303 could not be applied to recover interest for the late payment of maintenance. *Kaufman*, 299 Ill. App. 3d at 511. The court criticized *Sloane* for giving such narrow application to *Finley* and for basing its decision on the type of award at issue. *Kaufman*, 299 Ill. App. 3d at 511. The court explained that it was not the specific type of award that was crucial to the supreme court's rationale in *Finley* but, rather, the equitable character and nature of the entire dissolution action. *Kaufman*, 299 Ill. App. 3d at 511. Accordingly, the court concluded that *Finley* should be applied in all dissolution proceedings and that the award of interest was a matter for the trial court's discretion. *Kaufman*, 299 Ill. App. 3d at 511. Although the reasoning in *Kaufman* no longer applies to judgments for child support (735 ILCS 5/12—109 (West 2000)), it still applies to all other types of dissolution judgments.

■After a careful reexamination, we agree that *Sloane* improperly narrowed the scope of *Finley*. Simply because the parties have entered into a settlement agreement resolving the issues in dispute does not change the character and the nature of the dissolution proceeding. The trial court does not abandon its equitable powers over the parties and the subject matter simply because the parties have entered into a marital settlement agreement. See *In re Marriage of Osborne*, 327 Ill. App. 3d 249 (2002). The proceeding remains in the nature of a chancery proceeding and the rules governing such proceedings still apply. *Finley*, 81 Ill. 2d at 332. We find no compelling support for our conclusion in *Sloane* that a judgment entered pursuant to a marital settlement agreement somehow transmutes the nature of a dissolution proceeding for purposes of section 2—1303. Indeed, we note that our conclusion in *Sloane* lacks any citation to authority. Accordingly, we overrule *Sloane* as it is irreconcilably inconsistent with *Finley*. We therefore hold that the decision to award interest on any dissolution judgment, other than a judgment for child support, is a discretionary matter for the trial court.

■ Having concluded that the award of judgment interest in the instant case was discretionary, we turn to a consideration of the trial court's interest award. Here, the trial court found that the award of judgment interest was appropriate from the period of September 28, 2000, until the date that the transfer was completed. The trial court apparently found that, after September 28, 2000, the failure to transfer

the money was solely attributable to Gregory. Based upon the record before us, we cannot say that such a determination was an abuse of discretion.

As detailed above, in June 2000, Mary's attorney advised Gregory that Mary would take the responsibility for initiating the transfer. Mary's attorney did not contact Gregory again until August 2000, at which time she requested the execution of certain documents. The parties exchanged correspondence during the remainder of August 2000. In September 2000, Gregory went to Fidelity's office but was unsuccessful in his attempt to effectuate the transfer. Based upon such evidence, we believe that the trial court could reasonably conclude that the delay in transferring the assets up until this time was not solely attributable to Gregory.

After September 2000, however, the evidence demonstrates that Gregory did not take any action to effectuate the transfer. Gregory failed to take any action despite the repeated requests of Mary's attorney to execute the necessary letter of direction instructing Fidelity to transfer the assets from the IRA. Based on such evidence, we believe that the trial court could reasonably conclude that Gregory's failure to cooperate during this period was intentional and wilful and that equity required the award of judgment interest. Accordingly, we conclude that the trial court did not abuse its discretion in awarding judgment interest from September 28, 2000.

On cross-appeal, Mary asserts that she should have been awarded judgment interest dating back to the date of the original dissolution judgment. In light of our determination that the award of interest was not mandatory, we must reject this contention. Because equitable considerations govern the award of interest in a dissolution proceeding (*Finley*, 81 Ill. 2d at 332), we see no reason why the trial court could not have selected September 28, 2000, as the date to begin imposing interest. Prior to this date, the court determined that interest was not appropriate because Gregory was not solely to blame for the delay in the transfer. After this date, however, the trial court determined that Gregory was solely responsible and that equity demanded the imposition of interest. We therefore do not believe that the trial court abused its discretion in imposing interest from September 28, 2000, until the date of the transfer. We also find that the trial court did not abuse its discretion in awarding interest at a rate of 9%.

Accordingly, we vacate the trial court's orders of March 12, 2001, and May 21, 2001. The cause is remanded with instructions that the trial court enter an order requiring the transfer of $725,000 from Gregory's IRA to Mary in accordance with the terms of the dissolution

judgment. The trial court shall recalculate the interest due on that amount dating from September 28, 2000, until the date the transfer is complete and enter judgment accordingly.

For the foregoing reasons, the judgment of the circuit court of Lake County is vacated, and the cause is remanded with instructions.

Vacated and remanded.

BYRNE, J., concurs.

JUSTICE O'MALLEY, dissenting:

The majority holds that the language from the dissolution judgment is unambiguous. Ambiguous or not, the quoted language does not address how the transfer of funds is to be effectuated or who is responsible for effectuating the transfer of the funds. Thus, the legal maxim that parol evidence will not be used to interpret an unambiguous agreement does not help resolve the present dispute, which centers on affixing the responsibility (and thus the consequences) for the failure to timely transfer the money. The dissolution judgment simply recites that the funds shall be transferred; it does not affix responsibility upon Gregory to effectuate the transfer. In fact, the record amply supports the notion that both Gregory and Mary had to take action to effectuate the transfer. The trial court recognized this joint responsibility when it chose the wording of the dissolution judgment and when it made its express findings allocating the responsibility for the failure of the transfer to occur.

The flaw in the majority's analysis also is revealed in the remand instructions directing the trial court to enter an order requiring the transfer of $725,000 from Gregory's IRA to Mary. What if the IRA has diminished in value below $725,000? If that were to occur, the propriety of the trial court's detailed allocation of the responsibility for the failure to follow its order to transfer the money would be quite clear. Such allocation is just as proper even if the value of the fund has not diminished below $725,000.

Interpreting the terms of a marriage settlement agreement is a matter of contract construction. *Wenc*, 294 Ill. App. 3d at 243. One principle of contract construction is that a contract will not be construed to permit an absurd result. *Rubin v. Laser*, 301 Ill. App. 3d 60, 68 (1998). Another is that a contract should be given a fair and reasonable interpretation based upon all its language and provisions. *Fox v. Commercial Coin Laundry Systems*, 325 Ill. App. 3d 473, 475 (2001). The value of Gregory's IRA obviously is variable; if the majority's reading of the marriage settlement agreement would result

in an absurdity in a scenario that hardly is remote from the facts before us, I dispute the soundness of that interpretation.

The majority states that "[a] trial court does not abandon its equitable powers over the parties and the subject matter simply because the parties have entered into a marital settlement agreement." 332 Ill. App. 3d at 660. However, the majority does not consistently apply equitable principles in its analysis. The majority does not dispute the trial court's finding that Mary solely was responsible for the depreciation of the IRA that occurred between the date of the dissolution judgment and September 1, 2000, that both Gregory and Mary were responsible for the depreciation that occurred between September 1, 2000, and September 28, 2000, and that Gregory solely was responsible for the depreciation that occurred after September 28, 2000. Based on these findings, the majority considers it equitable and just to award Mary postjudgment interest only for the latter period. However, the majority apparently considers these findings irrelevant to another question of equity: Who was responsible for, and hence who should bear the consequences of, the IRA's diminution in value between the date of the dissolution judgment and the date of the transfer of the funds?

The finding that Mary solely was responsible for a certain period of time means that Gregory could not have transferred the $725,000 to Mary during that period of time. In other words, even if Mary unambiguously was entitled to have $725,000 transferred to her from Gregory's IRA, it would be patently unfair to saddle Gregory with the loss incurred during that period of time. If Mary solely was responsible for the funds being left in Gregory's IRA, then she, as the trial court found, solely is responsible for the diminution in value during that period of time. Given that Mary solely was responsible for a certain period of time and jointly responsible for another period of time for the failure to transfer the funds to her, the trial court's decision that she should share in any diminution during those times in accordance with her percentage of ownership was appropriate. In fact, if her conduct prevented Gregory from removing his share of the value of the diminishing IRA, she arguably is responsible for the diminution in value of his share as well.

As noted, the agreement is silent as to who has what duties to cause the transfer of the funds. Even if Gregory had a duty to transfer the funds to Mary, however, she had a duty to cooperate in the transfer. Every contract contains an implied covenant of good faith and fair dealing. *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 367 (1995). This covenant includes the condition that, whenever the cooperation of one party is necessary for the other

party's performance, such cooperation will be given. See *Kipnis v. Mandel Metals, Inc.*, 318 Ill. App. 3d 498, 505 (2000). The failure to perform a contractual obligation is excused where the other party prevents performance. See *Barrows v. Maco, Inc.*, 94 Ill. App. 3d 959, 966 (1981). The trial court found, and the majority agrees, that Mary was solely responsible for the delay that occurred between the date of the dissolution judgment and September 1, 2000. By failing to initiate the transfer of the funds, she violated the implied covenant of cooperation and excused Gregory's nonperformance during that period.

The majority relies on Gregory's interpretation of the marital settlement agreement. Asked during his testimony at the prove-up if he understood that the portion of the IRA that Mary was given under the settlement agreement would not be affected by market fluctuations, Gregory replied in the affirmative. However, Gregory's opinion is not relevant to the issue at hand because he was not asked whether he believed Mary's share would be affected by market fluctuations that occurred during a delay in the transfer of the funds for which Mary solely was responsible.

For the foregoing reasons, the majority's position is not supported by principles of contract law. Nor does equity permit Mary, who had delayed the transfer of the funds, to avoid any share in the loss in the IRA's value that occurred during the delay. She who requests equity must do equity. *Peddinghaus v. Peddinghaus*, 314 Ill. App. 3d 900, 907 (2000). That is, " '[g]ood faith, conscience, and reasonable diligence of the party seeking its relief are the elements that call a court of equity into activity' [citations]" (*Huszagh v. Holloway*, 116 Ill. App. 2d 455, 464 (1969)). In my view, Mary has proved her claim to the sum of $725,000 under neither contract principles nor equity. Rather, the legal or equitable principles relevant to this case all support the trial court's allocation of the IRA funds.