2022 IL App (1st) 210464-U

Nos. 1-21-0464 & 1-21-0693 (consolidated)

Order filed July 21, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF JESSICA ESTRADA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| and | ) | No. 10 D 5791 |
| | ) | |
| KENNETH WILLIAMS, | ) | Honorable |
| | ) | John T. Carr, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Rochford and Martin concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court correctly construed the plain and unambiguous language of the parties' marital settlement agreement to mean that, if and when the ex-husband receives any payment(s) in connection to the funds that have accumulated in the parties' marital property deferred compensation account, the parties will equally share the net payment(s).

¶ 2   In this interlocutory appeal from a post dissolution of marriage proceeding, the ex-wife filed in 2020 a petition for declaratory relief, seeking a declaration that, according to the terms of the parties' marital settlement agreement (MSA), she was entitled to an equal share of the net

payments of the ex-husband's deferred compensation account, which was marital property. The circuit court ruled that the plain and unambiguous language of the parties' 2012 MSA required them to equally share the net payment(s) from that account if and when the ex-husband receives any payment(s) in connection to the funds that have accumulated in that account.

¶ 3      On appeal, the ex-husband argues that the circuit court erred because the ex-wife was entitled to only a 50% share of the value of the deferred compensation account at the time the court entered the judgment for dissolution of marriage in April 2012.

¶ 4      For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 5                                    I. BACKGROUND

¶ 6      Jessica Estrada and Kenneth Williams were married in 1990. Jessica filed a petition for dissolution of marriage in 2010. In 2012, the trial court entered a judgment for dissolution of marriage that incorporated by reference the parties' MSA.

¶ 7      The MSA addressed, *inter alia*, the financial issues arising from the parties' divorce. Attached as exhibit A to the MSA was a spreadsheet that listed in eight columns the parties' assets and liabilities at the time of the judgment; who held title to the asset or who incurred the liability; who currently controlled the asset or liability; whether the asset or liability was marital or non-marital property; the value of the asset or liability; the assets awarded to Kenneth, the assets awarded to Jessica; and notes. The MSA allocated the parties' real estate, retirement accounts, bank accounts, vehicles, frequent-flyer airline mileage, and other personal property.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 8    Article IV of the MSA allocated the parties' retirement accounts, and part C of article IV addressed the deferred compensation account at issue in this case. During their marriage, the parties deferred portions of Kenneth's income into this account. Part C stated, in pertinent part:

"i) During the marriage, the parties deferred various portions of KENNETH's income into a Plan governed by Section 409(a) of the Internal Revenue Code. Pursuant to the terms of Section 409(a), the terms of Kenneth's employment contract as well as the terms set forth on the election forms executed by the parties when the income was deferred, the funds were deposited into two accounts managed by Northern Trust and said accounts are owned by KENNETH's employer (Accounts ending in 9766 and 9835). KENNETH's status related to these accounts is as an unsecured creditor.

ii) The parties acknowledge that when the funds are disbursed, they will be subject to Federal and State income taxes that will be deducted from the gross payments prior to payment to KENNETH.

iii) **If and when** KENNETH receives any payments in connection to funds that have been accumulated in the 409(a) Northern Trust Accounts, **the parties shall equally share the net payment**. Any and all necessary steps shall be taken by the parties to allow JESSICA's share of the disbursements from the 409(a) Plan to be directly transmitted to JESSICA. ***." (Emphasis added.)

Part C does not refer to or incorporate any balance-sheet entries from the MSA's exhibit A spreadsheet. Exhibit A states that the deferred compensation account was marital property that was comprised of two unvested accounts at the Northern Trust: account numbers ending in 9766 and 9835, valued at $992,490.25 and $1,408,893.34, respectively, as of December 31, 2011. Thus, as

of December 31, 2011, each parties' equal share of the combined value of the two Northern Trust accounts was $1,200,691.80.

¶ 9    In April 2014, Jessica served a notice to produce on Kenneth, seeking documentation regarding the deferred compensation account and another account. Kenneth filed his objections to the notice to produce. Regarding the deferred compensation account, he argued that the MSA provided for a specific division of that account and there was no legal dispute or issue related to that account. Then Jessica moved the court to enforce the judgment for dissolution of marriage and other relief. Regarding the deferred compensation account, she argued that she should receive her agreed-upon share of that account, *i.e.*, her equal share of the net payment(s) when received by Kenneth, including the accretions on that account since the entry of the 2012 dissolution of marriage judgment.

¶ 10    In September 2014, the trial court ruled that Kenneth must provide Jessica with the statements necessary to calculate her interest in the deferred compensation account. However, Kenneth moved the court to reconsider that order, and the trial court ultimately vacated *in toto* its September 2014 order. Jessica filed an appeal (case No. 1-15-0651) but later voluntarily withdrew it.

¶ 11    In 2015, funds from the deferred compensation account were transferred from Northern Trust to FineMark National Bank & Trust (FineMark).

¶ 12    In August 2019, Jessica had subpoenas served on Kenneth's employer and FineMark for records related to the deferred compensation account. Kenneth moved the court to quash those subpoenas.

¶ 13    In October 2020, Jessica filed a petition for declaratory relief, which is the subject of this appeal. She alleged that the 2012 judgment awarded her an equal share of the ultimate distributions from the deferred compensation account, and Kenneth had control and access over that account and refused to abide by the judgment and MSA. She asked for a declaration of rights stating that she was entitled to an equal share of the net payments from that account accumulated to date.

¶ 14    In his response, Kenneth argued that Jessica was not entitled to any accretions that may have occurred in the deferred compensation account since the 2012 judgment. Rather, she was entitled to receive only $1,200,691.80 from that account because that value was indicated on exhibit A of the MSA.

¶ 15    On March 24, 2021, the trial court held a non-evidentiary hearing on Jessica's petition for declaratory relief. After hearing argument, the court ruled that the plain language of article IV, part C of the MSA provided that Jessica was entitled to receive an equal share of the net payments from the deferred compensation account that had accumulated to date. The court also granted Kenneth's request for a finding that there was no just reason for delaying either enforcement or appeal or both of the court's order, pursuant to Illinois Supreme Court Rule 304(a) (eff. March 8, 2016). Kenneth appealed the trial court's oral ruling on April 23, 2021 (case No. 1-21-0464).

¶ 16    On June 8, 2021, the trial court issued a written order that granted Jessica's petition for declaratory relief. The court found that her interest in the deferred compensation account was not limited to $1,200,691.79 (an amount equal to 50% of the total amount of the account at the time the 2012 judgment was entered and reflected on exhibit A of the MSA). The court ordered that discovery would proceed and Kenneth must respond to the requests contained in Jessica's notice to produce. The court issued its express written finding that there was no just reason to delay either

enforcement or appeal or both of its order and continued Jessica's motion to determine the value of her distributive share of the deferred compensation account.

¶ 17    Kenneth timely appealed the court's written order (case No. 1-21-0693). Thereafter, this court consolidated case No. 1-21-0693 into case No 1-21-0464.

¶ 18                                II. ANALYSIS

¶ 19    "A marital settlement agreement is construed in the manner of any other contract, and the court must ascertain the parties' intent from the language of the agreement." *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009); see also *In re Marriage of Carrier*, 332 Ill. App. 3d 654, 658 (2002) ("[i]nterpreting the terms of a marital settlement agreement is a matter of contract construction and the court should seek to effectuate the parties' intent").

¶ 20    "The primary objective in construing a contract is to give effect to the intent of the parties." *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007). Specifically, a court enforces the intent of the parties at the time the contract was executed. *In re Marriage of Hildebrand*, 166 Ill. App. 3d 795, 798 (1988). "In determining the parties' intent, courts must view the contract as a whole and not focus on isolated terms or provisions." *In re Marriage of Chez*, 2013 IL App (1st) 120550, ¶ 16. The parties' intent is discerned "from the contract language. [Citation.] If the contract language is unambiguous, it should be given its plain and ordinary meaning." *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). If the contract language is susceptible to more than one meaning, it is ambiguous and a court can consider extrinsic evidence to determine the parties' intent. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). "However, the mere fact that the parties disagree as to the meaning of a term does not make that term ambiguous." *William Blair & Co., LLC v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 334 (2005). "Absent ambiguity, courts

must interpret a contract by its clear language and not according to the parties' subjective interpretations" *In re Marriage of Chez*, 2013 IL App (1st) 120550, ¶ 17. "Courts will construe a contract reasonably to avoid absurd results." *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse Inc.*, 388 Ill. App. 3d 81, 92 (2009). We review a trial court's construction of a marital settlement agreement under the *de novo* standard as a question of law. *Blum*, 235 Ill. 2d at 33.

¶ 21    Here, the relevant language of paragraph (iii) of article IV, part C of the MSA is clear, unambiguous and subject to only one reasonable construction. It is clear that Jessica and Kenneth will each take an equal or 50% share of the net payment(s) from the deferred compensation account if and when Kenneth receives any payments in connection to the funds that have accumulated in that account. Kenneth's suggested interpretation—that Jessica receives only a 50% share of the account balance that existed at the time the dissolution of marriage judgment was entered in 2012—is not supported by the plain meaning of the clear language of the MSA. The value of the amount that is subject to an equal split between Jessica and Kenneth is determined based on the amount of any distributions that are made from the accumulated funds in the account at the time of any distributions, after any fees, taxes or other costs have been deducted from those distributions.

¶ 22    To support his suggested interpretation of the MSA language, Kenneth cites *In re Marriage of Carrier*, 332 Ill. App. 3d at 658, for its holding that required the husband to split his retirement account with his wife based on the balance of that account at the time the court entered the dissolution of marriage judgment. *Carrier*, however, is distinguishable from the case before us. In *Carrier*, the parties' MSA provided that the wife would receive "[t]he sum of $725,000, which

shall be transferred to the Wife (or her directed retirement account) from the Husband's Fidelity Investments IRA/SEP account *** pursuant to a Qualified Domestic Relations Order." *Id*. at 655. The *Carrier* court found that the plain language of the MSA was not ambiguous and expressly stated that a total sum of $725,000 must be transferred from the husband's IRA account to the wife. *Id*. at 658. The MSA did not indicate that the wife's award from the IRA was to be based on a percentage of the account balance or affected by subsequent fluctuations in market value. *Id*.

¶ 23    Here, in contrast, the parties' MSA does not specify a sum certain to be transferred to Jessica. Although exhibit A attached to the MSA showed the then-current balance of the unvested deferred compensation account, the MSA did not reference that balance or forever limit Jessica's 50% share of the account to that balance. Therefore, we reject Kenneth's argument that Jessica is entitled to an award of only $1,200,691.80 from the account. We affirm the judgment of the trial court that Jessica and Kenneth will each take an equal or 50% share of the net payment(s) from the account if and when Kenneth receives any payments in connection to the accumulated funds in that account.

¶ 24                                  III. CONCLUSION

¶ 25    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 26    Affirmed.